FIRST NATIONAL BANK IN DALLAS,
Independent Executor, Petitioner,

v.

S. M. ZIMMERMAN et al., Respondents.

No. B–1366.

Supreme Court of Texas.

June 11, 1969.

Rehearing Denied July 16, 1969.

Fred H. Benners, Dallas, for petitioner.

Goldberg, Alexander & Baker, Steven B. Strange, Eugene L. Smith, Dallas, for respondents.

GREENHILL, Justice.

This action for damages for breach of contract was instituted by First National Bank in Dallas as executor of the estate of Murray Samuell, deceased. Samuell and his associate, Hugh McLaughlin, undertook negotiations in 1962 to purchase the minerals in 20,000 acres of land in the State of Tennessee owned by a Mr. Shook. As a result of these negotiations, Shook's agent,

Dillon A. Green, sent Samuell a letter dated April 10, 1962, in which he stated: "I herewith offer to sell to you approximately 20,000 acres of mineral interest land lying in Grundy, Sequatchie, Bledsoe and Cumberland Counties in the State of Tennessee for the sum of $5.50 per acre, upon the following terms: * * * " After enumerating the terms, the letter concluded, "The land to be conveyed hereunder known as the Shook lands."

Subsequent to their receipt of this letter, Samuell and McLaughlin entered into the contract which is the subject of this action. The other parties to the agreement were S. M. Zimmerman, William C. Huls, and A. F. Scott. The agreement reads in pertinent part as follows:

"Samuell is offeree in a certain letter dated April 10, 1962, from Dillon Green of Sherwood, Tennessee, for the purchase of approximately twenty thousand (20,000) mineral acres lying in Grundy, Sequatchie, Bledsoe and Cumberland Counties, Tennessee, and wishes, upon the following considerations, to assign to said Zimmerman, Huls and Scott or to a corporation to be formed by the latter, which corporation will probably be named Blue Sewanee Development Corporation and which is hereinafter referred to as Blue Sewanee all the rights of said Samuell and McLaughlin under said letter dated April 10, 1962, a photostatic copy of which is attached hereto as Exhibit A and incorporated herein by reference;

"The considerations above referred to are as follows:

"1. Second Parties [Samuell and McLaughlin] shall receive one hundred thousand (100,000) shares of the common stock of American Hydrocarbon Corporation. * * *"

Zimmerman, Huls and Scott thereafter purchased the property through the Blue Sewanee Development Corporation which was formed for that purpose. However, they allegedly breached their contract with Samuell and McLaughlin by failing to deliver to them the agreed consideration of 100,000 shares of American Hydrocarbon Corporation common stock.

McLaughlin sued Zimmerman, Huls and Scott for breach of contract, and the First National Bank in Dallas intervened in behalf of the estate of Murray Samuell, who had died prior to the filing of McLaughlin's suit. The trial court entered a pre-trial order severing the two causes, and we are concerned in this appeal only with the trial of First National Bank's action as executor against the three defendants.

On the trial of the case, the jury's verdict was favorable to Samuell's estate; *i.e.,* the jury found in answer to the special issues that Samuell and McLaughlin had performed their part of the bargain and that Samuell was damaged in the amount of $49,000 by the defendants' failure to deliver the 100,000 shares of American Hydrocarbon Corporation common stock. The trial court entered judgment on the jury's verdict. The Court of Civil Appeals reversed and remanded on the ground that the action was barred by the Statute of Frauds, Article 3995(4).[1] 436 S.W.2d 401. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

■■ Generally speaking, a contract for the sale of real estate is required by the Statute of Frauds to be in writing and to be so definite that the land to be conveyed can be identified with reasonable certainty. And as will be discussed below, Rule 94, Texas Rules of Civil Procedure, requires that if the Statute of Frauds is to be inter-

1. Vernon's Tex.Rev.Civ.Stat.Ann. (1966). Article 3995 provides: "No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * 4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year * * *."

posed as a defense, it must be affirmatively pleaded. The defendants did not plead the statute in this case. When the plaintiff sought to introduce the contract into evidence, the defendants objected to its admission because of the Statute of Frauds. The objection was overruled, and a recovery was allowed on the contract in the trial court.

■ On appeal, the Court of Civil Appeals held (1) that the contract sued upon was a contract for the sale of real estate; (2) that the description of the 20,000 acres in the contract is too indefinite to satisfy the Statute of Frauds; and (3) that the defendants did not waive their right to assert the Statute of Frauds as a defense by failing to plead it as an affirmative defense under Rule 94. We have concluded that under Rule 94 the defendants did waive their right to assert the Statute of Frauds as a defense, and therefore we do not reach the other questions presented by the Court of Civil Appeals' first two holdings. To be more specific, we do not reach the question of the applicability of the Statute of Frauds to the contract here involved.

Rule 94 provides as follows:

"In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, *statute of frauds,* statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * *" [Emphasis added.]

The second sentence of Rule 94, hereinafter discussed, reads:

"Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists."

■ Although the defendants did 'not plead the Statute of Frauds in accordance with the mandatory directive of Rule 94, they contend that they nevertheless preserved the right to assert the defense by objection to the admission into evidence of the contract on the basis that its enforcement would violate the Statute of Frauds.

Prior to the adoption in 1941 of our present Rules of Civil Procedure, the defendants' position would have been sound. The defense could be interposed by an objection to the evidence. League v. Davis, 53 Tex. 9 (1880); Cude v. Vaughn, 111 S.W.2d 1155 (Tex.Civ.App. 1937, no writ); International Harvester Co. v. Campbell, 43 Tex.Civ.App. 421, 96 S.W. 93 (1906, no writ). But the adoption of Rule 94 was intended to change the old practice. Shortly after it was adopted, the court in Reid v. Associated Employers Lloyds, 164 S.W.2d 584, 585 (Tex.Civ.App. 1942, writ ref'd), stated the purpose of Rule 94 as follows:

"That purpose is to require the defendant to announce in his pleadings what his defense will be, if it includes any of the matters referred to in the Rule, and to give plaintiff the opportunity of knowing what character of proof he may need to meet the defenses pleaded."

This observation was quoted with approval by this Court in Petroleum Anchor Equiptment, Inc. v. Tyra, 419 S.W.2d 829, 835 (1967), in which it was held that the defense of ratification, not having been pleaded, was waived. The second sentence of Rule 94 corrected a similar situation with regard to the old practice of requiring a claimant under an insurance policy to negative in his pleadings and proof all of the policy exceptions to liability. The second sentence was intended to reform an un-

just practice of pleading in one specific area, but the underlying evil sought to be remedied by that sentence also pervaded our system of pleading in general. The matter was expressed in T. I. M. E., Inc. v. Maryland Casualty Company, 300 S.W.2d 68 (Tex.Sup.1957), as follows:

"Before the adoption in 1941 of our present Rules of Civil Procedure a system of pleading had developed in this state in which there was such 'sandbagging' of courts as well as of opposing litigants. The pleading device known as a 'general demurrer' coupled with the general denial method of putting in issue rebuttal defenses and defenses based on exceptions and exclusions led to innumerable reversals, interminable delays and unnecessary expense. In adopting the Rules of Civil Procedure this Court sought to eliminate these roadblocks to a sound administration of justice. The general demurrer was abolished. Rule 90, Texas Rules of Civil Procedure. By Rule 279 a party was denied the right to a submission of special issues on rebuttal defenses in the absence of special pleading. Luther Transfer & Storage, Inc., v. Walton, Tex.Sup., 296 S.W.2d 750. In the same spirit the quoted provisions of Rule 94 were intended to eliminate hidden defenses to liability based on exceptions contained in insurance policies. The ultimate object of all of these changes in rules of pleading was to require a litigant, in so far as was reasonably possible, to put openly in issue on the trial of a case all of the reasons, in fact and in law, why the other party should not prevail."

■ Given this background and the plain and direct wording of Rule 94, it is our opinion that a party waives his right to assert the Statute of Frauds as a defense if he does not plead it. An objection to the evidence will not suffice.

We recognize that a number of cases contain expressions to the contrary, but in every instance the court's statement was dictum. For instance, in Elam v. Barrett, 245 S.W.2d 765 (Tex.Civ.App.1952, no writ), the court stated:

"The defense of the statute of frauds must be interposed by special exception or by special plea or by objection to the testimony. This, the appellant failed to do. Rule 94 * * *."

The court was not required to pass upon the sufficiency of an objection, however, because in that case the defense was not interposed *in any way*. The following authorities have no precedential value on the question at hand for the same reason: Edwards v. Strong, 147 Tex. 155, 213 S.W. 2d 979 (1948); Danaho Refining Co. v. Dietz, 398 S.W.2d 307 (Tex.Civ.App.1965, writ ref'd n. r. e.); Enfield Realty & Home Building Co. v. Hunter, 179 S.W.2d 810 (Tex.Civ.App.1944); Cessac v. Leger, 214 S.W.2d 860 (Tex.Civ.App.1948, writ ref'd n. r. e.).

■ Having concluded that the Court of Civil Appeals erred in reversing the trial court's judgment on the basis that enforcement of the contract sued upon would violate the Statute of Frauds, we now turn to a consideration of the petitioner's second contention, that judgment in its favor should have been entered on the jury's verdict for $50,000, rather than for $49,000 as entered by the trial court. As previously stated, the jury found that Samuell was damaged in the amount of $49,000 by the defendants' failure to deliver the 100,000 shares of American Hydrocarbon Corporation common stock. By their answer to another special issue, however, the jury found that the highest cash market value of the stock during the period in which Samuell was entitled to a one-half share was $100,000. Instead of awarding Samuell's executor with one-half of that figure, or $50,000, the jury awarded him $49,000 with a handwritten footnote notation, "Based on $50,000 damages, minus $1,000 received in check of February 15, 1963, issued by S. Mart Zimmerman to Murray Samuell, 'for commission-Blue Sewanee Devpmt. Corporation.'"

Samuell's executor contends that defendants were not entitled to have an offset of $1,000 because the defense of payment was not pleaded as required by Rule 94; and that their motion for judgment for $50,000 should have been granted. We disagree. The *verdict* of the jury was that the sum of $49,000 would reasonably compensate the plaintiff for the defendants' failure to deliver the 100,000 shares of stock. By way of explanation, the jury made a handwritten notation on the court's charge informing the court of the reason they answered the special issue as they did. But this handwritten notation was not the jury's verdict; it merely reflected the jury's mental process in arriving at their verdict. Under Rule 301, it is the trial court's duty to enter judgment in conformity with "the pleadings, the nature of the case proved and the *verdict* * * *." The jury's reasons for reaching a particular verdict are irrelevant, at least in the absence of some overt act of misconduct. We hold, therefore, that the trial court correctly entered judgment for $49,000 on the jury's verdict for that amount.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.