NO. 07-00-0297-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 7, 2001

_____


RICE FOOD MARKETS, INC.,
D/B/A PRICEBUSTER FOODS, APPELLANT

V.

DOROTHY T. RAMIREZ, APPELLEE


_____

FROM THE COUNTY COURT AT LAW NO. 1 OF HARRIS COUNTY;

NO. 669983; HONORABLE ED LANDRY, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.


Appellant Rice Food Markets, Inc. d/b/a Pricebuster Foods appeals from an adverse judgment in a suit for false imprisonment and malicious prosecution. By five issues appellant urges that (1) the jury did not answer the actual damages issue, or that the answer was too ambiguous to support a judgment, (2) the jury's answer to the punitive damages issue was a margin note and not a damages answer, (3) the evidence was legally and factually insufficient as to false imprisonment, malicious prosecution and both actual

and punitive damages. Subject to remittitur suggested to appellee, we reverse and render in part and affirm in part.

BACKGROUND

On August 2, 1995, appellee Dorothy Ramirez and two of her daughters entered appellant Rice Food Markets, Inc. d/b/a Pricebuster Foods, in Houston, to shop for groceries. When appellee and her daughters first entered the store, appellee opened a cold drink case, picked out a cold drink, opened it and drank it as she and her daughters shopped throughout the store. Before she exited the store, appellee was asked by a woman to follow her to the rear of the store. It turned out that the woman was employed by appellant as a store detective. Appellee and the store detective went to a security room in the back of the store. Appellee testified that she was then interrogated, handcuffed to a chair and left by herself. Following a period of time estimated to have been from ten to thirty minutes, she was taken to the front of the store where officers from the Houston Police Department were waiting. The officers took custody of appellee, she was photographed and then taken to jail. She was booked into jail, where she stayed until the early morning hours of August 3rd when her husband posted bond for her. Appellee was charged with theft of property of the value of less than twenty dollars. When the case was eventually called for trial in January, 1996, it was dismissed.

Appellee filed suit claiming false imprisonment and malicious prosecution. Trial took place on January 6, 2000. The jury charge contained six questions with instructions. In answer to questions 1 through 4 the jury found that (1) appellee was falsely imprisoned,

(2) appellant commenced a criminal prosecution against appellee, (3) appellant acted without probable cause and (4) appellant acted with malice in connection with the criminal prosecution of appellee. Jury Question 5 submitted a broad form actual damages inquiry; Jury Question 6 asked whether punitive damages should be awarded because of appellee's false imprisonment by appellant. We will address the issues in the order presented by appellant.

## THE JURY'S RESPONSE TO THE ACTUAL DAMAGES QUESTION

Appellee's actual damages claim was submitted in a broad form question with three elements of damages to be considered.[1] The jury was asked:

QUESTION NO. 5

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for her damages caused by Rice Food Markets, Inc., d/b/a Pricebuster Foods?

Consider the elements of damages listed below. Consider each element separately and do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

a. Injury to feelings, reputation, character and health.

b. Mental suffering

c. Expenses incurred in order to secure release from arrest and in defense of the criminal prosecution.

Answer: _____

---

[1]Appellee did not object to the charge. Appellant objected to the legal and factual sufficiency of the evidence to support the submissions, but did not object to the form or manner of submission of the questions and instructions. Accordingly, we review the jury questions, instructions and evidence to support a finding based on the questions and instructions as submitted to the jury, even if the questions and instructions are not entirely correct. See City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000); Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 844 S.W.2d 198, 200-01 (Tex. 1992).

The jury's response was to write "A. $30,000  B. $30,000  C. $6,700" following the colon after the word "Answer" so that the response looked thus:

Answer: A. $30,000   B. $30,000          C. $6,700

At the bottom of the page, in a blank area, the jury wrote the following note:

C. Estimated costs we do not really know.  Attorney fees in 1st
case, travel, bail, misc. costs incurred est. @ $6,700.

Following consideration of post-trial motions, the trial court entered judgment.  In its judgment the trial court recited that the jury found $66,700 in actual damages and $1,000 in punitive damages.  Judgment was entered for those amounts together with prejudgment interest on the actual damages.

Appellant's first issue addresses the jury's responses to question 5 and urges that the jury failed to render a verdict, or that the verdict was too ambiguous to support a judgment for appellee.  As components of its first issue appellant urges that (1) it sufficiently preserved error for appellate review, and in any event, the burden was on appellee to object to the improper form of the jury's answers; (2) when a broad form damages issue is submitted and the jury answers by providing separate responses to the individual elements to be considered, the jury responses have no legal effect and are tantamount to no legal award; and (3) the separate responses to separate elements, and the jury's notation that it did not have evidence on which to calculate its answer to element "C" rendered the verdict too speculative and ambiguous to support a judgment.  Appellant argues that because the jury's responses are effectively not a cognizable verdict on actual damages, and because appellee did not object to the form of the verdict before discharge

4

of the jury, the actual damages question should have been considered as unanswered and a take-nothing judgment should have been entered.

Appellee first responds that appellant did not preserve error because it did not timely object to the form of the jury's response to Question 5. Appellee notes that (1) the record contains no objection from appellant before the jury was discharged and (2) even if appellant timely objected to the form of the jury's response to question 5, its objection was waived because no record of the objection is presented on appeal. She further responds that (3) TEX. R. CIV. P. 291[2] specifies that no special form of verdict is required, (4) the jury substantially complied with requirements of the law by placing its responses in the answer blank provided, (5) the mathematical addition of the responses is a ministerial act properly conducted by the trial court and (6) the jury's marginal note about a lack of evidence for its answer to "C" must be disregarded.

We agree with appellee that appellant has not preserved error for review as to the form of the jury's answer. TEX. R. APP. P. 33.1(a)(1)(A)[3] requires error to be preserved for appellate review by a timely request or objection specifying the objecting party's complaint. TRCP 295 provides that if the purported verdict is defective, the trial court may direct it to be reformed. If the verdict is incomplete, not responsive to the jury charge questions or if the answers to the questions are in conflict, then the court shall give further proper written instructions and retire the jury for further deliberations. Id.

---

[2]A rule of civil procedure will be referred to hereafter as "TRCP _."

[3]A rule of appellate procedure will be referred to hereafter as "TRAP_."

The reporter's record does not contain an objection by either party to receipt of the verdict by the trial court. Appellant asserts that the clerk's record reflects its objection to receipt of the verdict based on the jury's response to question 5. Appellant's reference to the clerk's record, however, is to a statement in a post-trial filing by appellee wherein appellee quoted the trial judge as responding "I can add" when asked if the jury should total the amount of the verdict. Such reference does not set out who asked the question of the trial judge, when it was asked, does not indicate an objection to the trial court's actions and appellee disagrees that the trial court's statement was in response to an objection by appellant to the form of the jury's response to question 5. We conclude that the record presented does not contain a timely, specific objection by appellant to the form of the jury's response to question 5, and error has not been preserved as to the form of the jury's answer. See TRAP 33.1(a)(1)(A); Lewis v. Texas Emp. Ins. Ass'n, 151 Tex. 95, 246 S.W.2d 599, 601 (1952).

Appellant further argues that if the record does not reflect a timely, specific objection to receipt of the verdict, it is entitled to a new trial pursuant to TRAP 34.6(f). In advancing this argument, appellant refers us to a copy of a letter its attorneys wrote to the court reporter requesting the reporter's record for appeal. The letter requested inclusion of numerous items, including all bench conferences, objections, rulings of the court, final jury arguments, "the verdict" [sic] and post-trial hearing. The copy of the letter is attached as an exhibit to appellant's brief, but does not appear in the clerk's record or in the reporter's record.

6

The reporter's record does not contain a transcript of any proceedings after the parties' objection to the jury charge. Among the missing proceedings are the jury's reporting of its verdict to the trial court, the court's receipt of the verdict, and any objections to receipt of the verdict.[4] The record contains a certification by the reporter that the transcription contains all portions of evidence and all proceedings requested in writing by counsel for the parties "which occurred in open court or in chambers and were reported by me." Appellant asserts that the reporter did not record the post-charge conference trial activities through no fault of appellant. See TRAP 34.6(f)(2). Appellant claims entitlement to a new trial if the appellate record does not preserve its error as to the jury response to question 5 because the parts of the trial process not recorded are material to the appeal and it was the reporter's responsibility to record or report them pursuant to TRAP 13.1(a). Appellant cites Gillen v. Williams Bros. Constr., 933 S.W.2d 162 (Tex.App.--Houston [14th Dist.] 1996, no writ) in support of its position.

The appellate record does not contain a copy of counsel's letter requesting transcription of the reporter's record, nor does the record show the reason for the reporter's failure to report the post-charge proceedings.[5] TRAP 13.1(a) requires the court reporter or recorder to attend and report court sessions and make a full record of the proceedings *unless excused by agreement of the parties*. See Rogers v. CIGNA Ins. Co. of Texas, 881 S.W.2d 177, 181 (Tex.App.--Houston [1st Dist.] 1994, no writ). We may not consider a

---

[4]Nor does the record contain any pre-trial proceedings or opening statements, which were requested in the letter attached to appellant's brief.

[5]Neither does the record explain the absence of any pre-trial proceedings or opening statements which counsel's letter requested to be transcribed.

copy of a letter which is not part of the appellate record as explanation of why a reporter's record of the trial proceeding at issue is not before us. See TRAP 34.1; Davis v. Huey, 571 S.W.2d 859, 862 n.2 (Tex. 1978); Brown v. McGonagill, 940 S.W.2d 178, 179 (Tex.App.–San Antonio 1996, no writ). In the absence of explanation in the appellate record for the lack of that portion of the reporter's record in question, we conclude that appellant has not shown the reporter's record in question is lost or destroyed within the meaning of TRAP 34.6(f). Appellant has not preserved error as to its lack of a record of its purported objection to receipt of the verdict.

Even though appellant did not preserve error as to the form of the jury's response, we must consider the second aspect of appellant's first issue; that is, we still must consider whether the jury's response to question 5 was an answer to the question, or whether the response reflected only the mental processes of the jury. If the response was the jury's answer, it comprised the jury's verdict as to actual damages, but if the response consisted of notations reflecting mental processes of some or all members of the jury, then it could not be considered as part of the verdict. See Thomas v. Oldham, 895 S.W.2d 352, 359-60 (Tex. 1995); First Nat'l Bank in Dallas v. Zimmerman, 442 S.W.2d 674, 678 (Tex. 1969). And, a judgment must conform to the verdict, the pleadings and the nature of the case proved, see TRCP 301; Zimmerman, 442 S.W.2d at 678.

Appellant urges that the jury's response cannot be an answer, and therefore a verdict, because question 5 asks the jury to find a sum of money and provides only one answer blank. Appellee, however, notes that TRCP 291 provides that no special form of verdict is required and that the jury substantially complied with the law. We agree with

8

appellee and conclude that the jury's response as set out following the word "Answer:" in regard to question 5 is the jury's answer to the question, and thus its verdict as to actual damages, and not merely notations of mental processes. We base our conclusion on several factors. First, there is only one set of numbers on the sheet presenting question 5 to the jury,[6] and no other number or numbers which either party contends is in answer to the actual damages question appear anywhere else on the jury charge. See Wanda Petroleum Co. v. Reeves, 385 S.W.2d 688, 690 (Tex.Civ.App.--Waco 1964, writ ref'd n.r.e.). Second, the three numbers are labeled consistently with the labels of the elements which the jury was instructed to separately consider in determining its answer, *i.e.*, "a", "b", "c". Third, the response is in the one blank provided for the jury's answer to the question, although the response extends further than the blank. See Reeves, 385 S.W.2d 688, 690; compare Oldham, 895 S.W.2d at 359-360; and Mills v. Jackson, 711 S.W.2d 427, 428-29 (Tex.App.–Fort Worth 1986, no writ). Fourth, the judgment recites that the court read the jury's "verdict" in open court and ordered it to be filed. No objection to the verdict by any juror is alleged by the parties. See TRCP 293. Neither appellant nor appellee assert an irregularity in the actual trial proceedings relating to reading and accepting of the verdict, nor as to recitations of the judgment describing the reading and acceptance of the verdict. See TRCP 293, 294, 295. The judgment recites that the jury found appellee sustained actual damages in the amount of $66,700, which is the sum of the three amounts set out in the jury's response to question 5, and which in the absence of evidence otherwise in the record, we presume was the verdict read aloud to the jury by the trial court and accepted

---

[6]Neither party contends that the jury's note at the bottom of the page about "estimated costs" is an answer to or part of an answer to question 5.

9

without protest by the jury.  See Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987).

Appellant next urges that the jury answers to question 5 are too ambiguous to support a judgment for actual damages.  We disagree.

In support of its argument that the jury's answer is ambiguous, appellant cites Reeves, 385 S.W.2d 688.  Reeves involved five minor plaintiffs whose mother was killed in an automobile accident.  The suit sought damages of $3000 per year for each child during his or her minority.  When the case was submitted to the jury, however, the jury verdict form inadvertently provided only one answer blank for actual damages to be awarded.  The jury returned the answer form with no answer in the blank provided and numbered to correspond to the damages issue.  Instead, the name of each minor plaintiff was written following the jury foreman's signature and the amount "$1300" was written beside each name.  After the jury was discharged, it was discovered that after each minor plaintiff's name on the instruction sheet the words "$1300.00 per year" had been written.  The court of appeals "perceive[d] no determinative reason for according precedence to the answer written *out of its designated place on the answer sheet* ... over that written *out of place* ... following the instruction in the charge proper."(emphasis added).  Id. at 690.

We do not deem Reeves to be controlling of the question before us.  Unlike the jury in Reeves, the jury in this matter placed its response in the blank specifically provided for the answer to the actual damages question.  Appellant does not contend that any one or more of the jury's responses to question 5 was a "sum" which reasonably could be

10

interpreted as the single sum which the parties envisioned question 5 and its instructions to call for. Nor does appellant contend that the jury gave two answers to the question. Rather, appellant at least implicitly concurs that question 5 and the jury's responses, as written, manifest the jury's intent to answer the respective damage elements by labeling the numbers in the answer blank correspondingly because appellant's brief frames the issue presented as "whether a jury's notations as to the individual damage elements in a multifaceted broad form damage question has any legal effect."

The trial court's duty, and ours, is to ascertain the intention of the jury's answers, harmonize or reconcile the answers and issues and render a judgment in conformity with them. See State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 739 (1941). Appellate courts are further mandated to try to interpret jury findings so as to uphold the trial court judgment. See First Fed. Sav. & Loan Ass'n of Dallas v. Sharp, 359 S.W.2d 902, 903 (Tex. 1962).

We have already concluded that the jury's responses were answers to the question posed, and therefore were its verdict. One of our considerations in reaching such conclusion was that the three amounts were labeled according to the elements the jury was instructed to consider separately. Although only one of our considerations, the separate labeling of the amounts is indication that the amounts were not three possible answers to the question which appears to direct the jury to find one sum for the total actual damages. Interpreting the answers in context with the jury question, its accompanying instruction, the labeling of the elements of damages and the jury's labeling of its answers, we conclude that the jury's answers to question 5 can be interpreted so as to support the trial court judgment. Even assuming, *arguendo*, that the answers are ambiguous, they are not so

11

ambiguous that they will not support a judgment for actual damages. Cf. Bender v. Southern Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980)(apparent conflicts in jury answers must be reconciled if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole). We overrule appellant's first issue.

## PUNITIVE DAMAGES AWARD

By its second issue appellant challenges the award of punitive damages in the amount of $1,000. The punitive damages question asked whether punitive damages should be awarded, but did not ask the jury to set an amount of damages:

QUESTION 6

Do you find that punitive damages should be awarded for Rice Food Markets, Inc., d/b/a Pricebuster Foods false imprisonment of Dorothy T. Ramirez?

"PUNITIVE DAMAGES" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding punitive damages are:

a.  The nature of the wrong.
b.  The character of the conduct involved.
c.  The degree of culpability of Rice Food Markets, Inc., d/b/a Pricebuster Foods.
d.  The situation and sensibilities of the parties concerned.
e.  The extent to which such conduct offends a public sense of justice and propriety.
f.  The net worth of Rice Food Markets, Inc., d/b/a Pricebuster Foods.

Answer:_____

12

Appellee did not request submission of any additional jury questions relating to punitive damages, or object to the failure of the trial court to submit further questions in regard to punitive damages. See TRCP 279.

The jury wrote "Yes" in the blank provided for its answer. Below the answer blank in a clear area of the page the jury wrote "$1,000.00." Appellant's issue urges that the punitive damages award should be reversed because a question was not submitted asking the jury to assess an amount of punitive damages, and the handwritten notation of "$1,000" was not the jury's verdict, but merely a reflection of the jury's mental processes.

We agree with appellant that the margin note of "$1,000" will not support a judgment for punitive damages in the amount of $1,000. The jury's response to question 6 clearly was the "Yes" written in the blank provided for its answer. See Thomas, 895 S.W.2d at 359-60. Question 6 did not ask the jury to find a sum or an amount which should be awarded as punitive damages. The jury's verdict did not include the amount of $1,000. See id.; Zimmerman, 442 S.W.2d at 678. The judgment for punitive damages cannot be based on the jury's notation of $1,000. TRCP 301.

TRCP 279, however, provides that if one or more elements referable to a ground of recovery are submitted to and found by the jury, and one or more of the elements are omitted from the charge without request or objection, then the omitted elements shall be deemed found by the court in support of its judgment if there is factually sufficient evidence to support such a finding. TRCP 279; see American Nat. Petroleum Co. v. Transcon. Gas

Pipe Line Corp., 798 S.W.2d 274, 278 (Tex. 1990); Jones v. Springs Ranch Co., 642 S.W.2d 551, 553 (Tex. App.--Amarillo 1982, no writ).

Question 1 inquires if appellee was falsely imprisoned at Rice Food Markets, Inc. Questions 1 and 6 are referable to a claim for punitive damages because of appellee's false imprisonment. The failure of the trial court to submit a jury question asking the amount, if any, of punitive damages to be awarded was not objected to by appellant.[7] Thus two of the three requirements for a deemed finding of an amount of punitive damages in the amount of $1,000 by the trial court are present. See Jones, 642 S.W.2d at 553. The final requirement under TRCP 279 is that there be factual support for the finding in question. See id.

In determining whether factual support exists for a finding of $1,000 in punitive damages, we consider factors which are to be considered when assessing the amount of punitive damages. Jury question 6 included factors to be considered in awarding punitive damages. The factors included (1) the nature of the wrong, (2) the character of the conduct involved, (3) the situation and sensibilities of the parties concerned and (4) the extent to which such conduct offends a public sense of justice and propriety. See also

---

[7]We do not decide if jury question 6 properly submitted the issue of appellant's corporate liability for punitive damages. See Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997); MBank El Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153 (Tex. 1992). As worded, the question subsumed appellant's corporate liability. Appellant does not, on appeal, challenge the evidentiary support for such liability. Because the question, as worded, subsumed the issue of corporate liability, we need not, and do not, address whether a deemed finding as to corporate liability would have been supported by sufficient evidence. See TRAP 47.1; Rule 279; Jones, 642 S.W.2d at 553; Treasure City v. Strange, 620 S.W.2d 811, 812-14 (Tex.Civ.App.-Dallas 1981, no writ).

14

Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 29 n.26 (Tex. 1994); Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981).

Appellee offered evidence that she was accused of consuming items with a value of less than one dollar, taken to a back room, handcuffed to a chair and left alone while further investigation occurred. Such evidence, in light of the jury findings, is sufficient factual support for a deemed finding of $1,000 in punitive damages. We overrule appellant's second issue.

## SUFFICIENCY OF EVIDENCE OF ACTUAL DAMAGES

By its third issue appellant challenges the legal and factual sufficiency of the evidence to support the actual damages. Appellant, however, does not challenge that part of the damages awarded for injury to appellee's feelings and health (Question 5, element a), nor the evidence as a whole as to such element. In addressing this issue we note that counsel for appellee acknowledged at oral submission that if the jury's responses to question 5 were determined to be its verdict, then the responses would necessarily be separate damage findings on each of the three separate elements of damages, and the findings would be subject to examination for legal and factual sufficiency of the evidence as answers to the separate elements of damages. Because we have concluded in response to appellant's first issue that the responses are the jury's verdict as to actual damages, we address appellant's challenges to the sufficiency of the evidence to support the separate actual damages answers.

In reviewing "no evidence" complaints we consider only the evidence and inferences that tend to support the finding and disregard all contrary evidence and inferences. See Continental Coffee Products Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). A legal sufficiency point will be sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. See Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Cecil v. Smith, 804 S.W.2d 509, 510 n.2 (Tex.1991).

If a finding is challenged for factual sufficiency of the evidence, all of the evidence is reviewed, Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986), both favorable to and contrary to the findings. In re King's Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951). We reverse on the basis of factual insufficiency only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly erroneous or unjust. Id.

The factfinder, whether jury or trial court in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The factfinder may believe one witness and disbelieve another. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The factfinder resolves inconsistencies in testimony. Id.

16

According to appellee and her daughters, they were waiting in the checkout line with their groceries when a woman approached appellee, took her by the arm, and told appellee to follow her to the back of the store. Appellee testified that the woman then directed appellant to a back room of the store, interrogated her, inquired about her consumption of a cold drink and some cookies, handcuffed her to a chair and left. Appellee further testified that she was subsequently taken to the front of the store where officers of the Houston police department took custody of her and she was photographed. She felt embarrassed, ashamed and humiliated. Evidence indicated that persons who lived in the same area as appellee were present to observe the proceedings at the front of the store. The police then took her to jail. Her husband arranged to bond her out. Appellee testified that the bail bond cost $600. Appellee and her daughters testified that the consumed items were paid for by the daughters when they checked out of the store.

Appellant's store detective testified that appellee was not "detained" until appellee had already passed through the checkstand without paying for the consumed items, and was leaving the store. The detective did not recall handcuffing appellee to a chair, but could not deny that she did so.

Appellant first challenges the legal and factual sufficiency of the evidence to support the jury finding of $30,000 damages for mental suffering, which was labeled as element of damages "b." In addressing this finding, both appellant and appellee reference the jury's finding as a finding of damages for mental anguish, and cite cases addressing mental anguish. As the parties have joined issue on appeal based on the finding being for mental

17

anguish, we shall, without deciding that "mental suffering" equates to "mental anguish," address the finding as being for mental anguish.

Both appellant and appellee refer us to Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607 (Tex. 1996), and Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995), on this question. Appellant asserts that the record contains neither evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment or anger on the part of appellee, nor evidence that the nature, duration or severity of her mental anguish substantially disrupted her daily routine. See Saenz, 925 S.W.2d at 614.

Appellee testified that she felt embarrassed, ashamed and humiliated by her treatment. She testified that she stayed overnight in a jail cell with other ladies. She described the cell as "nasty" and stated that it did not smell good. Such testimony was the sum of her proof of mental anguish. She did not offer proof of any other disruption of her activities, physical symptoms, medical treatment sought or received, counseling sought or received or extent of damage to her feelings or of her anger over the episode. We conclude that appellee's evidence is no more than a scintilla of evidence of mental anguish and does not prove such a high degree of embarrassment, anger, vexation or substantial disruption of her daily routine as justifies an award of damages for mental anguish. We sustain appellant's challenge to the legal sufficiency of the evidence to support the jury verdict for mental suffering. See id.

Appellant next questions the legal and factual sufficiency of the evidence in support of the jury's award of $6,700 for expenses incurred in order to secure appellee's release from arrest and in defense of the criminal prosecution. Appellant claims that we must consider what it correctly calls the jury's margin note below the answer blank. The note states that "C. Estimated costs we do not really know. Attorney fees in 1st case, travel, bail, misc. costs incurred est. @ $6,700." Appellee points to her testimony that she spent $600 to bond out of jail and that she incurred expense and spent time traveling to court when the case was called for trial and the charges were dismissed.

As to this element of damages, the jury was instructed to find the amount that would fairly and reasonable compensate appellee for *expenses* incurred in obtaining her release and defending the criminal case. Appellee did not seek recovery for her time involved. Moreover, she does not reference the record to any proof of the value of her time spent or the value of that time.

First, we address appellant's contention that we must consider the jury's margin note. The authorities cited in our discussion of appellant's first issue make it clear that we may not consider the jury's notation. The notation is in explanation of the jury's answer. The Texas Supreme Court held in <u>Zimmerman</u>, 442 S.W.2d 674, that a jury notation in explanation of one of its answers could not be considered in evaluating the answer. <u>Id</u>. at 678.

Appellee's evidence contained some evidence of expenses incurred by appellee: she paid $600 to secure her release from jail. The evidence, therefore, is legally sufficient

to support an award of damages for her expenses. See Cazarez, 937 S.W.2d at 450. She proffered no further evidence of expenses, however, and the evidence that she paid $600 to bond out of jail is factually insufficient to support the award of $6,700. See In re King's Estate, 244 S.W.2d at 661. Accordingly, as to the jury award of expenses incurred by appellee, we overrule appellant's challenge to the legal sufficiency of the evidence, but sustain the challenge to the factual sufficiency.

Appellant next challenges the legal and factual sufficiency of the evidence to support the $30,000 award for injury to appellee's reputation and character. Appellee responds by referencing the record where she urges evidence exists to support the award in her favor.

In regard to the challenged award, the jury was instructed to consider, as one element of damages: "a. Injury to feelings, reputation, character and health." The jury's answer to such a multifaceted damages element effectively resulted in a broad-form damages question containing multiple elements. In answering such a broad-form question it is possible that the jury could have awarded the entire damage amount on the basis of any one of the elements. See Goodman v. Page, 984 S.W.2d 299, 304 (Tex. App.--Fort Worth 1998, pet. denied). Challenging the damages awarded pursuant to such a multifaceted question, an appellant must address each element and show that evidence is insufficient to support the entire award. See Wal-Mart Stores, Inc. v. Garcia, 30 S.W.3d 19, 24 (Tex. App.--San Antonio 2000, no pet.); Goodman, 984 S.W.2d at 304. As we have previously noted, appellant does not challenge the sufficiency of the evidence to support

20

damages awarded for injury to appellee's feelings or health, and appellant has waived its sufficiency challenge.  See Garcia, 30 S.W.3d at 24.

In sum, as to appellant's third issue, we sustain the legal sufficiency challenge to the award for mental suffering, we sustain the factual sufficiency challenge to the award for expenses incurred, we overrule the challenge to the award for that element including injury to reputation and character.

### FALSE IMPRISONMENT

Appellant's issue number four challenges the legal and factual sufficiency of the evidence to support the jury's finding that appellee was falsely imprisoned.  Appellant asserts that appellee voluntarily submitted to and complied with a request of appellant's store detective that she remain in the store in order to establish her innocence, thus she was not detained without her consent.

The jury was instructed, without objection,  that a person is falsely imprisoned when there is a willful detention of a person by another without the authority of law and without that person's consent.  See Wal-Mart Stores, Inc., 962 S.W.2d at 540.  We consider the evidentiary challenges in light of the jury question and instruction given to and answered by the jury.  See Zimlich, 29 S.W.3d at 71; Mendez, 844 S.W.2d at 200-01.

Appellee testified that she went to the back of appellant's store at the request and direction of the store detective.  She also testified that the detective handcuffed her to a chair in a room and left her there.  The detective later returned and escorted appellee to

21

the front of the store where she was photographed and turned over to the police. Appellant's store detective did not dispute the testimony that appellee was handcuffed and left in a back room.

Even if appellee voluntarily followed the store detective to the back of the store, evidence appellee was handcuffed to a chair and left in the back room of the store is some evidence that she was detained without her consent. Furthermore, when we consider all the evidence, the jury's finding that appellee was detained without her consent is not so against the great weight and preponderance of the evidence that it is manifestly erroneous or unjust. The evidence is legally and factually sufficient to support the jury's finding that appellee was falsely imprisoned. We overrule appellant's fourth issue.

## MALICIOUS PROSECUTION

Appellant's fifth issue challenges the legal and factual sufficiency of the evidence to support the jury's finding that appellant maliciously prosecuted appellee. Our prior overruling of appellant's challenge to the false imprisonment finding by the jury makes appellant's challenge to the finding of malicious prosecution immaterial in regard to whether appellee may recover actual damages. Jury Question 6 inquiring about punitive damages did not reference appellee's malicious prosecution theory. Accordingly, appellant's fifth issue is moot. We need not and do not address it. TRAP 47.1.

CONCLUSION

Subject to the suggestion of remittitur set out hereafter, that part of the trial court's judgment that awards $30,000 for mental suffering is reversed and rendered, and those parts of the judgment that award $30,000 for injury to appellee's feelings, reputation, character and health and $1,000 for punitive damages are affirmed. That part of the judgment awarding expenses incurred by appellee to secure release from arrest is also affirmed, subject to appellee's remitting $6,100 of the amount awarded for expenses incurred to secure release from arrest and in defense of the criminal prosecution. If appellee remits such amount of $6,100 within 20 days of the date of this opinion, the trial court's judgment will be affirmed as to (1) the award of $30,000 for injury to appellee's feelings, reputation, character and health; (2) $1,000 for punitive damages; and (3) $600 of the amount awarded for expenses incurred to secure her release from arrest. See TRAP 46.3; Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 51 (Tex. 1998); Larson v. Cactus Utility Co., 730 S.W.2d 640, 641 (Tex. 1987). If appellee does not remit the amount of $6,100 as suggested above, the judgment of the trial court will be reversed and the entire cause will be remanded for a new trial as to all issues of liability and damages. See TRAP 44.1(b), 43.2(d).


Phil Johnson
Justice


Publish.

23