Affirmed and Opinion filed February 20, 2003









Affirmed and Opinion filed February 20, 2003.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00154-CV

____________

 

SASSAM SASSOON, INDIVIDUALLY and

d/b/a SASSOON
PROPERTIES INVESTMENT GROUP, INC., Appellants

 

V.

 

HERBERT THOMPSON d/b/a HERBERT
THOMPSON ROOFING COMPANY,
Appellee

 



 

On Appeal from the County Civil Court at
Law No. 1

Harris County, Texas

Trial Court Cause No. 728,381

 



 

M E M O R A N D U M   O
P I N I O N

Appellants, Sassam Sassoon, individually and d/b/a Sassoon
Properties Investment Group, Inc. (Sassoon) appeals from a judgment in favor of
Herbert Thompson d/b/a Herbert Thompson Roofing Company (Thompson) following a
jury trial in which the jury found that both parties breached a contract
between them, but Thompson=s breach was excused and Sassoon=s was not.  In two issues, Sassoon challenges the legal
and factual sufficiency of the evidence supporting the jury=s verdict and the damages awarded to
Thompson.  We affirm. 








FACTUAL BACKGROUND

In April of 1999, Sassoon contracted with Thompson to repair
and replace a section of roof on a commercial building it owned.  The contract provided as follows:

We hereby propose to furnish all the materials and
perform all the labor necessary for the completion of:

Tare [sic] off old roof, and sweep clean.  Nail a base sheet, with special type
galvanized nails.  Hot mop one layer of
fiberglass felt paper, with hot tar.  Hot
mop the single ply system of Tamko Tam Flex #170 White.  Will cut tree limbs that are hanging low over
the roof.  Will put 2 very large vents
[sic] tops back on that have been left off, and lying on the roof.  Will clean and haul off my trash.  All labor is guaranteed 5 years, and a 12
years manufacturing warranty on the materials.

The contract also provided that all material was guaranteed to be as
specified, and the above work was to be performed “in accordance with the
drawings and specifications submitted for above work and completed in a
substantial workmanlike manner.”  The
total cost for the work specified was $23,500.00, with $5,000.00 due “3 days
after work and all materials on site,” $5,000.00 after completion, and the
balance of $4,500 due each month beginning June 1, 1999.  The contract further provided that “[a]ny alterations or deviations from above specifications
involving extra costs, will be executed only upon written orders, and will
become an extra charge over and above the estimate.”  

Shortly after Thompson began working on the roof, he
encountered difficulty with the lightweight concrete deck material under the
old roof.  The material had been exposed
to water, which caused it to degrade and become weakened.  Thompson tried to contact Sassoon to discuss
the alternatives for strengthening the deck before replacing the roof, but
Sassoon refused to come to the work site to view the problem.  Consequently, Thompson tried to dig out some
of the deck material and fill in the weakened areas with “blackboard insulation”
(described as a kind of plywood sheet) and some of the old roof materials.  The areas where the deck material was
degraded also would not hold nails, so Thompson was unable to nail down all of
the base sheet as the contract specified. 








Thompson then applied a single layer of fiberglass felt paper
over the base sheet as specified in the contract, but because he was not
satisfied that the single layer was sufficient, he applied a second layer even
though the contract required only one. 
Thompson was unable to discuss the extra work with Sassoon or obtain a
change order because he was still unable to contact Sassoon.  

According to Thompson, he stopped working temporarily until
Sassoon gave him the first $5,000.00 payment, although Sassoon contends on appeal
that he made the payment before it was due because not all materials were at
the site yet.  After receiving the first
payment, Thompson resumed working on the roof. 
As specified in the contract, Thompson used Tamko Tam Flex #170 roofing
material on most of the area, but he also used another material, Gemstar GMS,
which he considered to be the equivalent of the Tamko Tam Flex.[1]  Thompson discussed using Gemstar GMS with
Sassoon, who approved the substitution. 
Thompson also reinstalled the vent tops that previously had been left on
the roof and attempted to make temporary repairs to them because they were in “bad
shape,” but he did not request any extra money for making the repairs.

After Thompson finished working on the roof, Sassoon refused
to make any more payments.  In response
to Thompson=s collection efforts, Sassoon
contended that the work was not substantially completed, it was not performed
in accordance with the contract, and was not completed in a workmanlike
manner.  Sassoon also contended that
Thompson had not satisfied the statutory requirements for placing a lien on the
property.  Because Sassoon did not pay
the balance due, Thompson refused to provide the labor guarantee and materials
warranty specified in the contract. 








PROCEDURAL BACKGROUND

Thompson filed suit to recover the balance due on the
contract, alleging breach of contract and other claims, and ultimately adding
an alternative claim for quantum meruit. 
Sassoon counterclaimed with a number of claims.  On October 24, 2001, the case was tried to a
jury.

The jury made the following pertinent findings:  (1) the roof was repaired in accordance with
the contract; (2) Thompson breached the contract in some manner; (3) Thompson=s failure to comply with the contract
was excused; (4) Sassoon breached the contract by failing to pay; (5) Sassoon=s breach was not excused; (6)
Thompson=s failure to comply with the warranty
was a producing cause of damages to Sassoon, but the jury was not asked to
assess damages; (7) Sassoon waived his right to recover against Thompson for
breach of contract; and (8) Thompson=s damages were $23,500.

After the jury returned its verdict, the trial court signed a
judgment awarding Thompson damages of $18,500.00 (the jury award was reduced to
reflect Sassoon=s payment of $5,000.00), interest, and attorney=s fees.  Sassoon filed a motion for judgment
notwithstanding the verdict, or alternatively, motion for new trial or
remittitur, which was overruled by operation of law.  This appeal followed.

DISCUSSION

On appeal, Sassoon raises two issues.  In the first, he contends that the evidence
is legally and factually insufficient to support the jury=s finding that Sassoon=s failure to comply with the contract
was excused.  In the second, Sassoon
contends that the evidence is legally and factually insufficient to support the
jury=s damage award to Thompson.  We address each in turn.  








1.         Is the evidence sufficient to support the finding that
Sassoon=s failure to comply with the contract was not excused?

Sassoon acknowledges that he had the burden at trial to
demonstrate that his breach of contract was excused.  See, e.g., Howell v. Kelly, 534 S.W.2d
737 (Tex. Civ. App.CHouston [1st Dist.] 1976, no writ).  Therefore, on appeal, Sassoon=s legal sufficiency challenge
requires him to show that the evidence conclusively established that his
failure to perform under the contract was excused as a matter of law.  See Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989).  To sustain a
factual sufficiency challenge, he must show that the jury=s finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and
unjust.  See Francis, 46 S.W.3d at
242; Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  

The crux of Sassoon=s argument is that his breach is
excused because Thompson breached the contract first by failing to repair the
roof in a workmanlike manner, by providing substandard work, and by causing
greater damage to the roof.  Sassoon
contends the jury=s finding that Thompson failed to comply with the contract
and failed to comply with a warranty supports his argument.[2]  Sassoon also contends, as part of this issue,
that the evidence was legally and factually insufficient to support the jury=s finding that Thompson=s failure to comply was excused.








Sassoon has not carried his burden to show that Thompson
breached the contract first.  The quality
of Thompson’s work was hotly disputed at trial. 
Thompson testified in detail about the contract and the work he
performed on the roof.  He also testified
that Sassoon never asked him to come out and make any repairs to the roof.  Thompson then introduced the testimony of his
expert roofing consultant, Jerry Garrett. 
Garrett testified generally about the condition of the roof at the time
he inspected it, and responded to specific complaints that Sassoon had made
regarding alleged defects in the work.[3]  On cross-examination, he acknowledged that
Thompson=s work “left a little to be desired”
and some of his methods were not industry standard.  However, he did not say that the work was
deficient, or that the roof did not perform as intended.  In fact, as to one of the main complaintsCthat the roof had soft spotsCGarrett said it was very possible
that Thompson=s method, while unorthodox, would
hold and would seal the area back together.[4]

Sassoon was the only witness in support of his claims against
Thompson.  He testified that the section
of the roof Thompson did not work on had been replaced by another company
approximately a year earlier at a cost of $8,500.00, and that section had no
leaks or damage.  In contrast, the
section of the roof Thompson replaced was in worse condition after he worked on
it than before, and there were more leaks. 
Sassoon submitted into evidence several photographs of various sections
of the roof, including some showing standing water, and several pictures of
interior leaks.[5]  Sassoon also testified that he did not get
the repairs to the roof he felt he bargained for.  Finally, Sassoon also disputed Thompson’s
contention that he was not given an opportunity to return to the property to
make repairs, although the only evidence of this was an offer contained in a
lawyer=s demand letter.








In sum, the testimony regarding the quality of Thompson=s work was conflicting.  On this issue, neither side proved anything
as a matter of law.  This was a classic
case for the jury, and the jury made a decision.  As the sole judge of the credibility of the
witnesses and the weight to be given their testimony, a jury=s findings will not be disturbed if
there is evidence of probative force to support them.  See Benoit v. Wilson, 150 Tex. 273,
281, 239 S.W.2d 792, 796B97 (1951); Tigner v. City of Angleton, 949 S.W.2d 887,
889 (Tex. App.CHouston [14th Dist.] 1997, no
writ).  On this record, Sassoon has not
conclusively demonstrated (1) that Thompson breached the contract first by
performing substandard or deficient work on the roof, or (2) that the jury=s finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and unjust.  

In reaching this conclusion, we cannot help noting that
Sassoon=s attempt to meet his burden on
appeal was complicated by the charge, which was a mess.  Although Sassoon claims on appeal that
Thompson breached the agreement first so that Sassoon’s breach was excused, the
charge did not ask the jury to decide this specific issue.  At trial, Sassoon objected to the submission
of several jury questions, including question 5, saying that it might result in
conflicting findings, but on appeal, Sassoon attacks only two questions in the
chargeCwhich we have already held are
supported by evidenceCand does not complain about conflicting findings.  Because the rest of the questions are not
attacked on appeal, we must try to harmonize the jury’s answers so that the
charge can be upheld.  Bender v. S.
Pac. Transp. Co., 600 S.W.2d 257, 261B62 (Tex. 1980).  We can do that here.








From reading the record and the jury=s answers, it appears that the jury
concluded the following:  the roof was
completed in accordance with the contract (based on the “yes” answer to
question 1); Sassoon breached by not paying Thompson (based on the answer
to question 2); Thompson breached by not providing Sassoon a warranty[6];
but, Thompson=s breach was excused because Sassoon
did not pay him.[7]  Finally, Sassoon waived his right to recover
against Thompson for any breach.

We admit that this is not the easiest way to get to a verdict
in this case, but this is how the parties chose to submit the case, and we are
limited on review to the issues raised on appeal.[8]

In summary, Sassoon did not carry his burden to prove as a
matter of law that Thompson breached the contract in the manner in which he
repaired the roof and, therefore, that Sassoon=s breach was excused.  The evidence is legally and factually
sufficient to support the jury=s finding that Sassoon=s breach was not excused.  Issue one is overruled.

2.         Is the evidence legally and factually sufficient to support
the jury=s damages award to Thompson?

In this issue, Sassoon contends that the evidence is
insufficient to support the jury=s award of damages to Thompson in
response to Question 4.[9]  Specifically, Sassoon argues that there was
no evidence or insufficient evidence of the cost of Thompson=s labor and materials. 








When, as here, a party challenges the legal sufficiency of
the evidence supporting an adverse finding on an issue on which it does not
have the burden of proof, that party must demonstrate on appeal that there is
no evidence to support the adverse finding. 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).  If the record contains any evidence of
probative force to support the jury=s finding, the legal insufficiency
challenge must be overruled.  ACS
Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).  When reviewing a jury verdict to determine
the factual sufficiency of the evidence, we must consider and weigh all the
evidence, and should set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Dyson v. Olin Corp., 692 S.W.2d 456,
457 (Tex. 1985); In Re King’s Estate, 150 Tex. 662, 664B65, 244 S.W.2d 660, 661 (1951).

Question 4 read as follows:

What sum of money, if any, if paid now in cash, would
fairly and reasonably compensate [Thompson] for his damages, if any, that
resulted from the failure of [Sassoon] to comply with its agreement with
[Thompson] on the Project?

Consider the following elements of damages, if any,
and none other.  Consider each element
separately.  Do not include damages for
one element in any other element.  Do not
include any amount for interest on past damages, if any.

Element a:  The
reasonable and necessary costs to compensate [Thompson] for the labor and/or
materials provided to the project.  

Element b:  Any
and all other damages, costs or expenses incurred in connection with [Sassoon=s] failure to comply with the agreement.

You are instructed that, with respect to Question No.
4, [Thompson] need only prove his damages with a reasonable degree of
certainty.  This does not require proof
to an absolute mathematical certainty. 
If a wrong has been done from which monetary loss results, you may make
a just and reasonable estimate of the damage based on relevant data, including
opinion evidence, even if the extent of damages cannot be proved precisely.

Answer in dollars and cents for damages:

Answer:     “$23,500  
     a”  “0     b”








The jury=s answer indicates that the jury
awarded damages only for element “a,” the “reasonable and necessary costs to
compensate [Thompson] for the labor and/or materials provided to the project.”  Therefore, we will consider only the
sufficiency of the evidence supporting this element.  See Rice Food Markets, Inc. v. Ramirez,
59 S.W.3d 726, 732B33, 735 (Tex. App.CAmarillo 2001, no pet.).

Sassoon contends that the wording of element “a” reflects
Thompson=s decision to seek reliance damages
rather than expectancy damages for breach of contract.  Because Thompson failed to present any
evidence of “what Thompson’s costs were for the labor or materials, what his
profit margin was, or whether his costs incurred were reasonable and necessary
to the project,” Sassoon argues, the evidence is insufficient to support the
damages award.  We find that, under the
facts of this case, the evidence was sufficient to support the jury=s award because the contract was one
for labor and materials, and Thompson was working for himself.








The contract consisted, in summary, of a proposal to “furnish
all the materials and perform all the labor necessary for the completion of”
the specified work, for the sum of $23,500.00. 
Thus, the contract reflects the parties’ agreement that $23,500.00 was a
reasonable sum to compensate Thompson for his provision of labor and
materials.  Likewise, element “a”
instructed the jury to consider the reasonable and necessary costs to
compensate Thompson for exactly what he agreed to provide:  labor and materials.  At trial, the contract was admitted into
evidence and Thompson testified as to the contract balance.  He testified in detail about the work he
performed, the materials he used, and why the work was necessary to replace the
roof.  He also testified that he worked
for himself and owned his company, and the record reflects that he did the work
on Sassoon=s building by himself.  Therefore, the contract price, less the cost
of materials, represented payment for his own labor and, consequently, his
profit.[10]  Under these facts, it was not necessary for
Thompson to provide detailed evidence of the amount of money he spent on the
materials purchased, his profit margin, or a breakdown of the cost of his own
labor by rate and time.  The evidence is
sufficient in this circumstance to support the jury=s answer to Question 4.  Cf. Stamp-Ad, Inc. v. Barton Raben, Inc.,
915 S.W.2d 932, 936 (Tex. App.CHouston [1st Dist.] 1996, no writ) (holding evidence of
contract price was sufficient, in action by executive search firm against
client to recover remaining amount owed on contract, to uphold jury award).  We overrule Sassoon=s second issue, and, as a result, we
affirm the judgment of the trial court.

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 20, 2003.

Panel consists of
Chief Justice Brister and Justices Hudson and Fowler.

 











[1]  At trial,
Thompson=s expert, a roofing consultant, testified that the
Tamko Tam Flex #170 and the Gemstar GMS were Avirtually
the same product.@





[2]  Sassoon
takes the position that the jury=s
affirmative answer to Question 1, which asked whether Thompson repaired the
roof in accordance with the contract, does not conflict with these findings,
because the jury may have determined that Thompson performed some work in
accordance with the contract in Question 1, but found in answer to Question 5
that Thompson breached certain specific obligations under the contract.  In the alternative, however, Sassoon states
that the jury=s answer to
Question 1 is not supported by legally or factually
sufficient evidence.





[3]  For
example, Garrett acknowledged that there were Asoft
spots@ in the roof,
but opined that they were probably the result of the unstable decking
below.  Garrett testified that Thompson=s
attempt to repair the soft spots using old roof material was not one of his
suggested options for repair, but it was a method used quite a bit in the
industry.  Moreover, he testified, the
existence of soft spots did not necessarily mean there was a breach in the
integrity of the roof.  He also admitted, however, that a new roof should not
have soft spots. 
Garrett acknowledged there were areas where water collected, but he
attributed those to the sagging understructure of the deck. 





[4]  Sassoon=s lawyer objected to this testimony, but the jury was
not instructed to ignore it.





[5]  Only
two of the photographs were discussed in any detail.  One showed a large puddle or pond of water on a
section of the roof Sassoon contended was part of the section Thompson had
repaired; it also showed several tree limbs hanging over the roof.  Sassoon explained that another picture showed
the portion of the roof that Thompson did not work on.  Other photographs were referenced generally
as showing interior leaks or Thompson=s
repairs to the vent tops.





[6]  This
conclusion is based on the jury=s
answer to question 1, in which the jury concluded Thompson performed in
accordance with the contract, on the jury=s
answer to question 5, in which the jury was instructed that A>failure
to comply with its contract=
means failure to perform any promise which forms a whole or any part
of the contract,@ (emphasis
added) and on the jury=s answer to
question 8, in which the jury held that Thompson failed to comply with the
contractual requirement to give Sassoon a warranty.  This
conclusionCthat the breach only had to do with the warranty and
not the workmanshipCis consistent with the jury=s finding that the roof was repaired in accordance
with the contract.





[7]  The
uncontroverted expert testimony was that it was not customary for a roofer to
give a warranty if he were not paid.





[8]  Sassoon has
not brought an issue attacking the following findings: (1) that the roof was
repaired and replaced in accordance with the contract; and (2) that Sassoon
waived his right to recover against Thompson. 
Since they were not challenged, we presume there is sufficient evidence
to support them.  He also has not argued
that the jury=s answers fatally conflict with each other.  See Bay Petroleum Corp. v. Crumpler,
372 S.W.2d 318, 319 (Tex. 1963).





[9]  Sassoon
argues that Question 19, in which the jury also awarded damages of $23,500.00
to Thompson, is duplicative of Question 4. 
Question 19 asked, A[w]hat is the value of the labor done and materials
furnished by [Thompson] for the construction of improvements or repair of the
building and property located at 2616 Blodgett?@  Our resolution of Sassoon=s
issue two makes it unnecessary for us to discuss Question 19.





[10]  If Thompson
had hired other people to help him with the work, we could probably assume that
the contract price included an amount for profit.  However, that did not happen.  ThompsonCwho was
self-employedCworked for himself, and so it was unnecessary for him
to add in a layer of profit above and beyond his basic labor rate.