WAL–MART STORES, INC., Appellant,

v.

Leonor GARCIA, Appellee.

No. 04–99–00344–CV.

Court of Appeals of Texas, San Antonio.

Aug. 16, 2000.

J. Preston Wrotenbery, Kevin D. Jewell, Magenheim Bateman & Helfand, P.L.L.C., Houston, for Appellant.

Robert L. Rodriguez, Rodriguez & Muniz-Berain, P.C., Eagle Pass, Thomas H. Crofts, Jr., Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Leonor Garcia ("Garcia") slipped on a jalapeño in a Wal–Mart store and fell, injuring herself. A jury assessed $75,000 in damages against Wal–Mart Stores, Inc. ("Wal–Mart") for past and future physical pain, mental anguish, and medical expenses.

Wal–Mart argues that the evidence is legally and factually insufficient to support the jury's finding that Wal–Mart possessed actual or constructive knowledge of the jalapeño. In addition, Wal–Mart challenges the award of future medical expenses and mental anguish damages on legal and factual sufficiency grounds.

## Discussion

### 1. Standard of Review

In considering legal sufficiency points, a reviewing court considers only the evidence favorable to the decision of the trier of fact and disregards all evidence and inferences to the contrary. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If more than a scintilla of evidence is offered on a fact, the evidence is legally sufficient to support the jury's finding on that matter. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In considering factual insufficiency points, a reviewing court assesses all the evidence and reverses for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, the reviewing court does not serve as fact finder, pass upon the credibility of witnesses, or substitute its judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *See Thrift v. Hubbard*, 974 S.W.2d 70, 76 (Tex.App.-San Antonio 1998, pet. denied).

### 2. Issue One: Actual or Constructive Notice of the Jalapeño

In its first issue, Wal–Mart argues that no legally or factually sufficient evidence exists to support the jury's finding that Wal–Mart had actual or constructive

knowledge of the dangerous condition in the store.

### a. Narrowing the Issue

 Wal–Mart is the land owner; Garcia was an invitee on Wal–Mart's land. Wal–Mart owed Garcia a duty to exercise ordinary care to protect her from those risks of which Wal–Mart was aware. Wal–Mart also owed Garcia a duty to protect her from those risks of which Wal–Mart should have been aware after a reasonable inspection. *See Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996). These duties, however, do not make Wal–Mart an insurer of Garcia's safety on the premises. *See Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). Wal–Mart is not liable for *every* injury arising from a dangerous condition on its premises. In order to hold Wal–Mart liable for the dangerous condition on its premises, Garcia has the burden of proving:

(1) Actual or constructive knowledge of some condition on the premises by Wal–Mart;

(2) That the condition posed an unreasonable risk of harm;

(3) That Wal–Mart did not exercise reasonable care to reduce or eliminate the risk; and

(4) That Wal–Mart's failure to use such care proximately caused Garcia's injuries.

*See id.*

 The disputed issue in this case is whether Wal–Mart had actual or constructive knowledge of the jalapeño on the floor before Garcia slipped and fell. Constructive knowledge means that Wal–Mart should have known or discovered the jalapeño after a reasonable inspection. *See Lopez,* 929 S.W.2d at 3. To show that Wal–Mart had constructive knowledge of the jalapeño, Garcia has the burden to demonstrate "that it was *more likely than not* that the [jalapeño] had been there" for a period of time within which Wal–Mart should have been aware of the condition. *See Gonzalez,* 968 S.W.2d at 938; *Lopez,* 929 S.W.2d at 3. Proving merely that the jalapeño "*could possibly* have been there long enough to make Wal–Mart responsible for noticing it" is insufficient. *Gonzalez,* 968 S.W.2d at 938.

### b. Garcia's Argument

 Garcia argues that Wal–Mart was on notice of the dangerous condition in the snack bar area and failed to take appropriate action in keeping the area clean. By failing to keep the area clean, Wal–Mart did not exercise reasonable diligence that would have led to the discovery of the jalapeño. Garcia states that there were no customers in the area at the time of her accident who had food items from which a jalapeño could have dropped. As a consequence, the jalapeño must have been on the floor for an adequate period of time within which Wal–Mart should have discovered it, especially considering the employees were looking directly at the area.

Garcia testified that, while waiting in line, she noticed the floor was dirty. She saw "trash, Styrofoam cups" on the floor. She also explained that the trash bins were "full ... it was so full that the lid was open and there were some on the floor." Garcia waited for her order for seven to nine minutes; during that time, she did not see anyone clean the area. After Garcia left the counter, she slipped and fell. Garcia's daughter, Patricia Gonzalez ("Gonzalez"), later discovered a jalapeño on Garcia's sandal.

Gonzalez testified that "the floor was dirty, and the trash was very full. There were cups on the floor, napkins." She said the jalapeño was wrinkled and was not fresh. She explained that after Garcia fell, the employees "were starting to clean up, cleaning the tables, the floor."

### c. Wal–Mart's Argument

Three Wal–Mart employees testified; two of the employees indicated the snack bar area was clean before the accident. Maria Ofelia Regaldo, who works at the

snack bar, could not remember the last time the area had been cleaned before Garcia fell. Maria Isabel Fuentes ("Fuentes"), the snack bar manager, gave testimony that was generally favorable to Wal–Mart, but that was frequently contradicted. She said also that prior to the accident, "[a]s always, I was cleaning the areas in the snack bar." But she could not recall "exactly where I was" at the time of the accident. She testified that from behind the counter, she could "pretty much see the entire snack bar area." The jury also heard excerpts from her deposition in which the following exchange occurred:

> [Q:] And are you not saying that you looked at that; that you went out there and cleaned that floor right before she fell? Are you?
>
> . . .
>
> A: No, because we never knew-we never knew he is going to fell or not. [sic] We cannot be looking at who is going to be throwing things on the floor, who is going to be falling and who is not going to be falling.
>
> . . .

Fuentes' then contradicted herself again. She stated, "We don't have time to be cleaning. Every time that the area needs cleaning, we clean it." Jesus Rodriguez ("Rodriguez"), the store manager, agreed that "it would be a matter of a few seconds to scan the floor and detect a jalapeno [sic] on the floor."

Wal–Mart argues the jalapeño went unnoticed by snack bar personnel because it fell immediately prior to Garcia's accident. It argued that the jalapeño was fresh at the time of Garcia's accident. Rodriguez speculated that because the jalapeño still had juice in it, as evidenced by its streak mark, it was fresh. Yet, Rodriguez agreed with the proposition that "if somebody else had dropped a jalapeno [sic] 5, 10, 15 minutes before, it still would have had juice in it." Rodriguez testified that the jalapeño came from Martha Rodriguez ("Martha"), a customer who was sitting next to the area where Garcia fell. Rodri-

guez recalled that "no one else [was] eating nachos." Martha, however, testified that she ordered popcorn and soda only, and never had any nachos.

### d. Factual Sufficiency

The testimony by the six witnesses is conflicting. We conclude, however, that factually sufficient evidence exists to support the jury's verdict.

### e. Legal Sufficiency

In reviewing the legal sufficiency point, we set aside the evidence that does not support the verdict. Testimony by Martha and Gonzalez provide a scintilla of evidence that the jalapeño was not fresh. The testimony in favor of the jury's verdict is clear: no one had been served a jalapeño prior to the accident. The amount of time that the jalapeño could have been on the floor is within the time, according to Rodriguez, that Wal–Mart should have cleaned the area. Garcia and Gonzalez's testimony provide a scintilla of evidence that Wal–Mart failed to clean the area in a timely fashion. In addition, the food service personnel were in very close proximity to the site where the jalapeño fell and had an unobstructed view of the area. They should have noted the hazardous condition and taken remedial steps to keep the area safe. This case is factually distinguishable from *Gonzalez*. The evidence in the present case shows "more likely than not" that the jalapeño had been on the floor for several minutes-a period of time within which Wal–Mart employees, by their testimony, should have cleaned the jalapeño from the floor. The evidence does not even show a remote possibility that the jalapeño had fallen immediately prior to Garcia's accident.

We conclude legally sufficient evidence exists that establishes the jalapeño was on the floor for a sufficient period of time within which Wal–Mart should have discovered the hazard.

### 3. Issue Two: Mental Anguish Damages and Future Medical Expenses

#### a. Mental Anguish Damages

The jury awarded Garcia $25,000 for "physical pain and mental anguish sustained in the past" and $5,000 for "physical pain and mental anguish" that Garcia will likely sustain in the future. Wal–Mart argues that the evidence is legally and factually insufficient to support the award of mental anguish damages.

Garcia argues that Wal–Mart waived its challenge to the sufficiency of mental anguish evidence. Wal–Mart attacks only the mental anguish element of the jury's awards; it does not attack the physical pain element.

When a damage issue is submitted in broad form, ascertaining the amount the jury awarded for each element of damages is difficult, if not impossible. *See Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 921–22 (Tex.App.-Beaumont 1999, pet. denied). An appellant who seeks to challenge a multi-element damage award on appeal must address each element and show the evidence is insufficient to support the entire award. *See id.* at 922. If an appellant fails to address an element of damages, the appellant waives the sufficiency challenge. *See id.*

In *Brookshire Brothers, Inc.*, the appellant attacked only the mental anguish element of an award that was for past and future physical pain and mental anguish. It did not offer argument regarding physical pain. The court held that it waived its right to complain about the sufficiency of the awards. *See id.*

We conclude that Wal–Mart waived its right to complain on appeal about the sufficiency of the mental anguish award.

#### b. Future Medical Expenses

The jury awarded Garcia $22,000 for future medical expenses. Wal–Mart argues that the evidence is legally and factually insufficient to support this award.

Wal–Mart asserts that the award should be deleted entirely or, in the alternative, reduced to $17,000.

Texas follows the "reasonable probability rule" for future damages arising from personal injuries. *See Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). We have acknowledged that the award of future medical expenses also lies within the discretion of the jury. *See City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex.App.-San Antonio 1988, writ denied). No precise evidence is required; the jury may award such damages based upon the nature of the injury, the medical care rendered prior to trial, and the condition of the injured party at the time of trial. *See id.*

Wal–Mart argues that surgery is not reasonably probable because Garcia is afraid of further surgery. Although she testified that she does not want further surgery, she stated also that she would be willing to undergo an additional operation if her physician recommended it.

Garcia's physician testified that the additional surgery would cost $17,000. The jury was not bound by this figure. *See id.* Consistent with *Vela*, the jury could have considered Garcia's particular injuries, previous medical treatments, *previous* expenses of $23,000, her current debilitated physical condition, and her attendant treatment subsequent to the surgery. *See id.* We conclude that the evidence is legally and factually sufficient to support the award of $22,000 for future medical expenses.

### Conclusion

The evidence is legally and factually sufficient to support the jury's verdict. The trial court's judgment is affirmed.

SARAH B. DUNCAN, Justice, concurring in the judgment only.