**BEACH BAIT & TACKLE, INC., Appellant,**

v.

**Christina L. BULL, Appellee.**

**No. 04–01–00450–CV.**

Court of Appeals of Texas, San Antonio.

June 12, 2002.

Eugene J. Pitman, Attorney At Law, Houston, for Appellant.

Rebecca L. Reitz, Gay & Reitz, P.C., Houston, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

CATHERINE STONE, Justice.

Beach Bait & Tackle, Inc. ("BB & T") appeals a judgment in favor of Christina L. Bull ("Bull") in a premises defect case, asserting that the evidence is legally and factually insufficient to support the jury's finding that BB & T had actual or constructive knowledge of the condition at issue. We affirm the trial court's judgment.

## BACKGROUND

While employed by BB & T, Bull fell and severely injured her ankle while walking into a storeroom to use a time clock to time in. The back of the storeroom is the back wall of the store. Bull was in the process of opening the store and was the only person present when she fell. Bull

sued BB & T, alleging that she slipped in water that was on the floor. A jury found BB & T negligent and awarded Bull $85,145.88 in damages. BB & T appealed.

## STANDARD OF REVIEW

█ In considering a legal sufficiency challenge, we consider only the evidence favorable to the decision of the trier of fact, and we disregard all evidence and inferences to the contrary. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Wal–Mart Stores, Inc. v. Garcia,* 30 S.W.3d 19, 21 (Tex.App.-San Antonio 2000, no pet.). If more than a scintilla of evidence supports the jury's finding, the legal sufficiency challenge fails. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983); *Garcia,* 30 S.W.3d at 21.

█ In considering a factual sufficiency challenge, we assess all the evidence, and we only reverse the trial court's judgment if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garcia,* 30 S.W.3d at 21. Under this analysis, we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Garcia,* 30 S.W.3d at 21.

█ In a premises defect case, the plaintiff has the burden of proving each of the following elements:

(1) Actual or constructive knowledge of some condition on the premises;

(2) That the condition posed an unreasonable risk of harm;

(3) That the defendant did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the defendant's failure to use such care proximately caused the plaintiff's injuries.

*Garcia*, 30 S.W.3d at 22. BB & T only challenges the sufficiency of the evidence to support the first element of Bull's claim—actual or constructive knowledge of the condition.

### EVIDENCE

Kurt Evans, the President of BB & T, testified that water would seep under the back wall during a hard rain. Evans also testified that the ceiling also would leak in certain locations. Evans testified that on the day that Bull fell water had seeped under the back wall but not at the location where Bull fell. However, Evans also stated that he did not walk back to the area where Bull fell and that when he arrived another employee, Sean Allen, was already mopping or vacuuming the water with a shop vac. Evans stated that he had only noticed water at the location where Bull fell on two occasions when a pipe broke. Evans admitted that he knew standing water would be in the store after a hard rain "[i]n places against the wall." Evans stated that BB & T had piled additional concrete against the edge of the foundation, put hot tar along the concrete, and installed gutters in an effort to seal the wall where the seepage occurred. Although these efforts helped the problem, Evans admitted that the seepage was not stopped.

Diana Lynn Hernandez, a former employee of BB & T, testified that the ceiling of the store leaked during hard downpours. Hernandez also testified that water would seep under the back wall. Hernandez testified that she saw water at the location where Bull fell on several occasions that was caused by the water seepage. Hernandez stated that when she saw standing water, she reported it to whoever was in charge at BB & T on that day.

Hernandez testified that BB & T had approximately ten buckets that were specifically used to catch water from leaks. Hernandez stated that efforts were taken to keep the water from seeping under the wall, but the efforts only fixed the problem temporarily.

Robert Buford, an employee of BB & T, testified that several places in the store had leaks when it rained. Buford also stated that he saw water seep under the back wall. Buford testified that he had never seen any water at the location where Bull fell. Buford testified that BB & T had approximately three buckets that were used to catch the water from leaks. Buford testified that BB & T had poured concrete against the back wall to alleviate the problem, but he believed the concrete was poured after Bull fell. Buford testified that new employees are instructed to check the back wall when it rains and clean up any water.

Bull testified that the store had numerous leaks. Bull further testified that she observed water seeping under the back wall and into the storeroom. When Bull returned to work after her injury, Bull took photographs of water seeping under the wall after it rained, and those photographs were introduced into evidence. Bull testified that she had noticed the water seeping under the back wall on a few occasions before she fell but in different places—not in the location at which she fell. Bull testified that Sean Allen, another employee, cleaned up the water after she fell. Bull testified that it had rained hard the night before.

Sean Allen testified that he mopped up water after Bull fell but not at the location where Bull testified that she fell. Allen testified that he had never seen water in the location at which Bull fell. Allen stated that Bull told him that she was clocking

in and fell when she turned. In response to whether Bull said anything about water, Allen testified that Bull was in pain and did not say very much at all. Allen further testified that Bull told him that she had been out all night and had not slept yet. On cross-examination, Allen admitted that he had spoken with Evans about Bull's fall before testifying in court. Allen also stated that he had mopped up water along the back wall on numerous occasions.

## DISCUSSION

In order to prove that BB & T had actual or constructive knowledge of the water, Bull was not required to present direct evidence of BB & T's knowledge. In *City of San Antonio v. Rodriguez*, 931 S.W.2d 535 (Tex.1996), Rodriguez sued the City of San Antonio for injuries sustained when he slipped on a wet spot at a city-owned recreation center. The City asserted that there was no evidence that it knew of the water on the floor. *Id.* at 537. The Texas Supreme Court rejected the City's argument, holding:

> [T]here was evidence that the person in charge of the recreation center knew of the leaks in the roof and knew that it had been raining. Depending on the position of the leaks above the floor and the amount of rain, the jury might have inferred that the person in charge knew that there would be water on the floor.

*Id.; see also Wal–Mart Stores, Inc. v. Tinsley*, 998 S.W.2d 664, 668–69 (Tex.App.-Texarkana 1999, pet. denied) (constructive knowledge inferred in part from evidence that ceiling leaked).

In this case, the evidence was undisputed that water seeped under the back wall. The location where Bull slipped was near the back wall. Hernandez testified that on several occasions, water seeping under the back wall had caused water to be present at the location where Bull fell. Although the evidence with regard to whether water was seen at the exact location at which Bull fell was disputed, we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Garcia*, 30 S.W.3d at 21. The jury could have believed Hernandez's testimony. The jury also could have inferred from the undisputed testimony regarding the water seepage and from the evidence of the location at which Bull fell that BB & T knew there would be water on the floor in that location after it rained. The evidence is legally and factually sufficient to support the jury's finding that BB & T had actual or constructive knowledge of the condition.

## CONCLUSION

The trial court's judgment is affirmed.