United States Court of Appeals
Fifth Circuit

**F I L E D**

April 30, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40006

_____

BILLIE F. DIXON,

Plaintiff-Appellee,

v.

WAL-MART STORES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

In this simple negligence case, Defendant-Appellant Wal-Mart Stores, Inc. ("Wal-Mart") appeals the district court's denial of its motion for judgment as a matter of law following a jury verdict in favor of Plaintiff-Appellee Billie F. Dixon. She had brought suit against Wal-Mart after she tripped on a strip of plastic that was lying on the floor near a check-out register at a Wal-Mart store in Texas. Concluding that Dixon has not established a sufficient evidentiary basis on which a reasonable jury could find in her favor, we reverse the district court's order and remand for entry of judgment as a matter of law in favor of Wal-Mart.

I. FACTS AND PROCEEDINGS

In July 1996, Dixon tripped and fell at approximately 5:00 p.m. on a Sunday while leaving a Wal-Mart store in Longview, Texas. After checking out at one of the registers, she fell when her feet becoming entangled in a piece of plastic similar to the rope-like plastic strips that are typically used to bind newspapers or magazines into stacks. The injuries resulting from her fall were relatively severe, requiring Dixon to obtain immediate medical treatment at a nearby hospital. Thereafter, she continued to receive regular medical treatment for maladies related to this incident.

In July 1998, Dixon filed suit against Wal-Mart in Texas state court, alleging injuries resulting from Wal-Mart's negligence in failing to maintain reasonably safe premises at its Longview store. Wal-Mart removed the case to federal court under our diversity jurisdiction. At a two-day trial in October 1999, Dixon claimed that Wal-Mart failed to remove an unreasonable risk of harm to its customers at its Longview store, viz., the plastic binder on the floor near the check-out registers. She did not claim actual knowledge by Wal-Mart, instead proffering two evidentiary bases for Wal-Mart's constructive knowledge of this unreasonable risk of harm: (1) the close physical proximity of the plastic binder to Wal-Mart employees, i.e., the location of the plastic binder only several feet away from the employees staffing the check-out registers, and (2) the sufficiently long time that the plastic

2

binder had remained on the floor, i.e., the implication that the plastic binder had been dropped at the location of her fall by the magazine and newspaper suppliers who restocked the store between 4:30 and 8:30 a.m. that day, more than eight hours prior to her 5:00 p.m. accident. Wal-Mart countered with uncontroverted testimony that (1) all employees are trained to pick up any debris or trash in the store, (2) managers and employees frequently perform safety inspections of the store, and (3) the particular area in which Dixon fell had been inspected most recently approximately five minutes before her accident. The jury returned a verdict for Dixon, but also found her 50% at fault for the accident. Thus, the jury awarded Dixon one-half of the total damages of $125,000.

Pursuant to Federal Rule of Civil Procedure 50, Wal-Mart moved for judgment as a matter of law both at the close of Dixon's case-in-chief and prior to submission of the case to the jury. The district court denied both of these motions. Following the return of the jury verdict, Wal-Mart renewed its motion for judgment as a matter of law, which was again denied. Wal-Mart timely filed a notice of appeal.

## II. ANALYSIS

A.    Standard of Review.

We review <u>de</u> <u>novo</u> rulings on motions for judgment as a matter

of law, applying the same standards as the district court.[1] Under Rule 50, judgment as a matter of law should be granted if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonably jury to find for that party on that issue."[2] Accordingly, Rule 50 mandates that we adopt a "sufficiency of the evidence" standard in our de novo review.[3]

This standard requires that we consider all evidence in the light most favorable to the opposing party and draw all reasonable inferences in favor of the opposing party.[4] We may not make credibility determinations or weigh any evidence, which are fact-finding judgments to be made by the jury, not by the court.[5] Nonetheless, "[i]f the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict, then we will conclude that the motion should have been granted."[6]

---

[1] Resolution Trust Co. v. Cramer, 6 F.3d 1102, 1109 (5th Cir. 1993).

[2] FED. R. CIV. P. 50(a)(1).

[3] Scottish Heritable Trust, PLC v. Peat Marwick Main & Co., 81 F.3d 606, 610 (5th Cir. 1996).

[4] Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

[5] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[6] Resolution Trust Co., 6 F.3d at 1109.

B.   Sufficiency of the Evidence of Wal-Mart's Negligence.

   1.   Texas Law on Premises-Owner Liability.

As this case was removed to federal court under our diversity jurisdiction, we look to Texas law for the substantive standards defining Wal-Mart's duty of care to its customers.  In Texas, a customer, such as Dixon, is an invitee.  As such, business owners like Wal-Mart owe "a duty to exercise reasonable care to protect her from dangerous conditions in the store known or discoverable to it."[7]  Notably, this is a duty requiring only <u>reasonable</u> <u>care</u> by the business owner:  Texas courts have repeatedly stated that businesses are not insurers of an invitee's safety.[8]  Therefore, to prove premises liability on the part of a business owner, a plaintiff must show:

   (1)   Actual or constructive knowledge of some condition on the premises by the owner/operator;
   (2)   the condition posed an unreasonable risk of harm;
   (3)   the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
   (4)   the owner/operator's failure to use such care proximately caused the plaintiff's injuries.[9]

In this case, Wal-Mart did not contest that the plastic binder on the floor constituted an unreasonable risk of harm or that Dixon

---

[7] <u>Wal-Mart Stores, Inc. v. Gonzalez</u>, 968 S.W.2d 934, 936 (Tex. 1998).

[8] <u>Id.</u>  See also <u>Wright v. Wal-Mart Stores, Inc.</u>, 73 S.W.2d 552, 554 (Tex. App.⸺ Houston [1st Dist.] 2002) (noting that a business is not an insurer of an invitee's safety on its premises);  <u>Wal-Mart Stores, Inc. v. Garcia</u>, 30 S.W.3d 19, 22 (Tex. App. ⸺ San Antonio 2000) (same).

[9] <u>Keetch v. Kroger Co.</u>, 845 S.W.2d 262, 264 (Tex. 1992).

5

was in fact injured in a trip and fall caused by this binder. Wal-Mart disputes only Dixon's allegation that it had constructive knowledge of the presence of the plastic binder on the floor. Therefore, the sole issue on appeal is whether Dixon established a sufficient evidentiary basis on which a reasonable jury could find that Wal-Mart had constructive knowledge of the plastic binder's presence on the floor.

2.    Constructive Knowledge.

On appeal, Dixon reiterates her trial contention that Wal-Mart had constructive knowledge of the plastic binder's presence, given its proximity to Wal-Mart employees and the length of time —— at least eight hours —— that inferentially it had been at that spot on the floor. She maintains that either of these propositions establishes a sufficient evidentiary basis for presenting this issue to a jury. We shall deal with each of these claims in order.

a.    Evidence of Proximity of Object to Employees.

The argument that constructive knowledge can be inferred from the close physical proximity of an unreasonable risk to the employees of a premises owner was recently rejected by the Texas Supreme Court in <u>Wal-Mart Stores, Inc. v. Reece</u>.[10] In that case, a Wal-Mart employee walked directly past a puddle of liquid on the floor, but did not notice the liquid until after the plaintiff had slipped on it and fallen. The plaintiff maintained that Wal-Mart

_____

[10] 81 S.W.3d 812 (Tex. 2002).

had constructive knowledge by virtue of the employee's propinquity to the puddle, despite the employee's undisputed lack of actual knowledge of the liquid's presence. Wal-Mart argued that, as none of its employees knew of the spill, the plaintiff failed to bear her burden of proving knowledge, constructive or actual, on the part of a premises owner. The plaintiff in Reece did not adduce any evidence of what caused the spill or — more importantly — how long prior to her slip and fall the spill had occurred. The jury found in the plaintiff's favor, and the Texas appellate court affirmed the verdict based solely on the proposition that the Wal-Mart employee's proximity to the puddle satisfied the element of Wal-Mart's constructive knowledge of the puddle's existence.

In the Texas Supreme Court, Wal-Mart insisted that alone an employee's proximity to a hazard cannot establish constructive knowledge. Wal-Mart argued that such a rule would (1) require "omniscience" of a premises owner, (2) not a provide premises owner with a fair opportunity to inspect, correct, or warn invitees of the risk, and (3) impose constructive knowledge instantly, at the moment a hazard is created, and thus make a premises owner a de facto insurer of invitees' safety.[11] The Texas Supreme Court agreed with all of Wal-Mart's arguments, reversed the trial court and the intermediate appellate court, and rendered a take-nothing judgment

---

[11] Id. at 814-15.

against the plaintiff.[12]  In so doing, the <u>Reece</u> court announced the rule that "proximity evidence alone is insufficient to establish constructive notice absent some indication that the hazard existed long enough to give the premises owner a reasonable opportunity to discover it."[13]

<u>Reece</u> further establishes that physical proximity evidence is relevant only in case-by-case determinations of constructive knowledge based on the length of time that the risk has been present.  A plaintiff might be able to show, for instance, that a shorter presence is required to establish constructive knowledge for a conspicuous hazard that is near a premises owner's employees than for an inconspicuous hazard that is remote from such employees.[14]  Still, the rule in Texas is that temporal evidence, not proximity evidence, is the <u>sine</u> <u>qua</u> <u>non</u> of a premises owner's constructive knowledge.[15]

Dixon argued before the district court that Wal-Mart's motion for judgment as a matter of law should be rejected because the accident "happened two feet from a cashier."  She did not argue that this is only an additional factor for determining the reasonableness of Wal-Mart's constructive knowledge based on her

---

[12] <u>Id.</u> at 817.

[13] <u>Id.</u> at 815.

[14] <u>Id.</u> at 816.

[15] <u>Id.</u>

temporal evidence.  Neither did she adduce any evidence at trial of the conspicuousness of the plastic binder on the floor.  She argued only that the plastic binder's proximity to Wal-Mart employees serves as an independent basis for finding that Wal-Mart had constructive knowledge of the plastic binder's presence on the floor.  Yet, Reece mandates the conclusion that the accident's occurrence just "two feet from a cashier" is, by itself, nondeterminative of Wal-Mart's constructive knowledge.  Thus, Dixon's proximity argument and her reliance on proximity evidence fails the legal standard under Texas law for determining a premises owner's constructive knowledge.

b.    Temporal Evidence of the Plastic Binder's Presence.

Dixon asked the jury to infer that the plastic binder was on the floor constantly for more than eight hours until her late afternoon accident, presumably having been dropped there in the early morning by the magazine or newspaper suppliers.  This is simply unreasonable, given the totality of the evidence proffered at trial. Our standard of review mandates that we draw all reasonable inferences in favor of Dixon, and the applicable substantive law in this case requires a premises owner to "exercise reasonable care" vis-à-vis an invitee.[16]   Under Texas law, a premises owner's constructive knowledge is predicated on temporal evidence because a premises owner is not an insurer of an invitee's

_____

[16] Gonzalez, 968 S.W.2d at 936.

9

safety, and therefore a premises owner must have the opportunity ——
sufficient time —— to "exercise <u>reasonable</u> care to reduce or
eliminate the risk."[17]

Most often, the reasonableness of constructive knowledge of a
premises owner is defined in terms of the <u>minimum</u> time required for
a risk to exist before it can constitute constructive knowledge.[18]
To establish a premises owner's constructive knowledge owner of the
presence of an unreasonable risk of harm, a plaintiff generally
must prove that the risk existed for a time sufficiently long to
permit the premises owner (or his employees) to (1) discover it and
(2) correct it.  For this reason, defendant premises owners often
respond, as Wal-Mart did in the instant case, that the risk existed
for such a brief period of time that, as premises owner, it had
insufficient time for the peril to be recognized and corrected.[19]
Fealty to her pleading burden and to the <u>only</u> evidence she was able

---

[17] <u>Keetch</u>, 845 S.W.2d at 264.

[18] <u>See, e.g.</u>, <u>Wright</u>, 73 S.W.3d at 555 (rejecting
plaintiff's argument that the cause of her slip and fall, a
french fry, was on the floor a sufficiently long time to
establish constructive knowledge given only that the french fry
was dirty and that Wal-Mart failed to keep sweeping records of
the area).

[19] <u>See, e.g.</u>, <u>Brookshire Food Stores, LLC v. Allen</u>, 2002 WL
31769486, *4 (Tex. App. —— Texarkana 2002) (nothing that "the
available evidence suggests the grapes [on which the plaintiff
slipped and fell] were not on the floor longer than fifteen
minutes"); <u>Garcia</u>, 30 S.W.3d at 23 ("Wal-Mart argues the jalepeno
[on which the plaintiff Garcia slipped and fell] went unnoticed
by snack bar personnel because it fell immediately prior to
Garcia's accident.")

to adduce motivated Dixon to imply at trial that (1) the source of the plastic binder was the magazine and newspaper suppliers who visited the store more than eight hours prior to her accident, and (2) the plastic binder lay there the entire eight hours, just steps from the cash register, without being seen.

For the jury to make this inference, however, was logically unreasonable, particularly in light of the evidence submitted by Wal-Mart, which was undisputed by Dixon. Wal-Mart's front-end manager, Jean Chatham, testified that it is "part of our job" constantly to survey the area in which Dixon fell and to pick up any trash. Chatham's job description required her to patrol this particular area approximately once every five minutes, specifically looking for any trash, debris, puddles, or merchandise that should be removed from the area. She further testified that the cashiers go through the same training regimen as do the managers, and that every employee is responsible for making sure that foreign objects are picked up and that any potential risk is promptly eliminated. This testimony was confirmed by the assistant store manager, Luther Fairley, who noted that "picking stuff up off the floor isn't just one person's responsibility but...belongs to all the employees at Wal-Mart."

In addition, the Store Director, Greg Smith, explained that all Wal-Mart employees are trained according to company policy "[t]o be on the look-out at all times" for "merchandise on the floor," including such items as a plastic binder and other "type

11

trash." He confirmed Chatham's testimony that the front-end managers are responsible for patrolling the area around the check-out registers, making rounds approximately every five minutes or so. "[T]hey do make the rounds," he said, "just like myself even, my assistant managers, all of us make the rounds. We obviously try to keep everything as much as possible a hundred percent free of trash, debris and any type of safety hazard."

Smith noted further that, in addition to giving responsibility for cleaning activities to cashiers, front-end managers, assistant managers and himself, Wal-Mart employs a "safety team," which patrols the entire store and constantly trains the employees. Smith explained:

> What they look for is specific hazards and basically what their job duty is —— we cover it every day. It's constant training. We have morning and evening meetings with our associates and the safety team does demonstrations. We do spill demonstrations. We do demonstrations on picking up trash, and we have a specific safety team, but it's everybody's duty to maintain the sales floor, including myself. . . . [I]t's just part of my job and my duties to keep the floor clean.

Also, a maintenance crew, comprising a minimum of two employees, is on duty during the "busy times of the day, between say 10 [in the morning] and eight o'clock at night." Their singular job function is to "walk around with a broom, dust pan and a mop and clean the floors."

The result of Wal-Mart's policies, its training programs, and the cleaning responsibilities of all Wal-Mart employees is palpable. Smith testified that approximately five million

12

customers use the Longview Wal-Mart store each year, averaging about 13,700 customers each day, but that only some 50 accidents occur per year.  None of this evidence — none of the testimony of Chatham, Fairley or Smith — was challenged or contradicted by Dixon.

Given this extensive evidence of constant searches for hazards by myriad Wal-Mart employees, and the dearth of temporal evidence by Dixon of the presence of the hazard any closer to her fall in time than eight hours, the conclusion is inescapable that any plastic binder dropped by the vendors that morning could not possibly have remained at the location of her fall for those many hours without being discovered.  And, absent evidence of some other, believable period of the plastic binder's presence prior to the fall, no reasonable jury could find negligence by Wal-Mart based on constructive knowledge of the risk.  When the sole source of the hazard advanced by Dixon is eliminated as being a virtual impossibility, her burden of proof of constructive knowledge fails.

During argument before the district court on Wal-Mart's renewed motion for judgment as a matter of law, Dixon's attorney explained that Wal-Mart must have had constructive knowledge of the presence of the plastic binder because

> it might be something from the magazines.  They stock the magazines at eight o'clock.  If it was left from eight o'clock that morning to five o'clock that afternoon, that's certainly

13

not prudent (emphasis added).[20]

It strains credulity, let alone the bounds of logic and reason, that a plastic binder large enough to entangle Dixon's feet and cause her to fall could have lain on the floor in such a high-traffic area of the store for at least <u>eight</u> <u>hours</u>. This area was traversed by thousands of customers that day, and was under the constant surveillance of numerous Wal-Mart employees as well. Yet, Dixon would have the fact-finder believe that the plastic binder lay there for more than eight hours without a single person noticing it, let alone picking it up and removing it. She adduced no evidence that anyone —— neither a customer nor an employee —— noticed the plastic binder lying on the floor for over eight hours during the busiest portion of the business day in one of the most heavily trafficked areas of the store.

That is simply not credible. When the only source of the binder on which Dixon presented evidence is eliminated as constituting an impossibility, she is left without proof of a source, and thus without proof that the binder had been in place (1) long enough for knowledge of its presence to be imputed to Wal-Mart, but (2) not so long as to defy reason.

In fact, Dixon's proximity argument works in favor of Wal-Mart

---

[20] Smith earlier testified that the newspaper and magazine vendors restock the area near the check-out registers "early in the morning." He further explained that "[t]he morning run on the newspapers is typically 4:30, five o'clock in the morning. The magazine people usually get there eight, nine o'clock, somewhere around in there."

on this point, not against it. We have shown that it is a logical impossibility that this plastic binder remained on the floor for at least eight hours when it was only feet away from the cashiers, other Wal-Mart employees, and a legion of customers. Had the binder been dropped no later than 8:00 a.m., then in light of the evidence submitted by Wal-Mart, the plastic binder simply could not have lain there all that time without having been seen and removed. The obvious flaw in Dixon's theory is the premise that the <u>only</u> way the binder could have gotten to the place of the accident was to have been dropped there that morning by a vendor. Yet Dixon offered <u>no evidence of any other source or of any time closer to the accident</u> to place the plastic binder on the floor at the site of her trip and fall. The result is that Dixon has not met her burden to plead and prove credible facts to support even an inference of constructive knowledge of this risk on the part of Wal-Mart.

In a similar case, <u>Wal-Mart Stores Inc. v. Gonzalez</u>, the Texas Supreme Court rejected a plaintiff's "logic" that the presence of "dirt" on spilled macaroni salad justified the inference that the macaroni had been on the floor long enough to impute constructive knowledge to Wal-mart of this risk to its customers. The court explained that

> [d]irt in macaroni salad lying on a <u>heavily-traveled aisle</u> is no evidence of the length of time the macaroni had been on the floor. That evidence can no more support the inference that it accumulated dirt over a long period than it can support the opposite inference that the macaroni had just

15

been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle.[21]

The result of the Gonzalez court's rejection of this evidentiary basis for the plaintiff's implying that the risk existed for a long time was that there was "no evidence that the macaroni had been on the floor long enough to charge Wal-Mart with constructive notice of this condition."[22]  Concluding that the plaintiff thus failed to meet her evidentiary burden in pleading notice, the Supreme Court reversed the trial verdict in her favor.[23]

The instant case presents the logical converse of Gonzalez. Simply because most cases focus on the minimum time requirement for constructive knowledge does not mean that there is not a maximum temporal proximity as well.  Put another way, a plaintiff asserting premises-owner liability is not free to assert that a risk continued to exist unabated for some illogically long period, regardless of the factual context.  If it were otherwise, plaintiffs could assert constructive knowledge of risks that were proved to have existed days or even weeks earlier.  Without any reasonable limit on such temporal arguments, premises owners would

---

[21] Gonzalez, 968 S.W.2d at 937 (emphasis added).

[22] Id. at 938.

[23] The Texas Supreme Court similarly reversed another trial verdict in favor of a slip-and-fall plaintiff when it ruled that "smushed" grapes were not a sufficient evidentiary basis for inferring a long enough period of time for constructive knowledge.  The plaintiff offered no other temporal evidence of constructive knowledge on the part of the premises owner.  Thus, her verdict was reversed.  See generally Allen, 2002 WL 31769486.

16

indeed become _de_ _facto_ insurers of invitees' safety.[24]

In this case, Dixon would infer constructive knowledge from evidence of a span of time that is simply too long to be credible. Moreover, her inference is not supported by the totality of the evidence presented at trial; on the contrary, the inference that she was able to sell to the jury is totally refuted by that very evidence. She simply asks too much of a jury to believe that the only source of the plastic binder on which Dixon tripped — the magazine suppliers — were last present more than _eight_ _hours_ before her fall, and that the plastic binder lay there undetected all that time. Dixon's inability to show a credible source of the hazard within a reasonable period — a time _between_ (1) the instant

---

[24] It is this essential requirement of Texas's premises-owner liability law that the dissent overlooks in its accusation that we are "crafting a new rule of law" that creates a "presumption in favor of premises owners." To the contrary, we are acting within the province of our mandate under _Erie_ to predict how the Texas courts would resolve the novel evidentiary issue presented in this case. In so doing, we are applying (1) the absolute rule stated in every Texas premises-owner-liability case that premises owners are _not_ insurers of their invitees' safety and (2) the _reasonableness_ standard repeatedly applied by the Texas Supreme Court in such premises-owner liability cases as _Reece_, _Gonzalez_ and _Allen_.

The dissent would have us ignore this vital jurisprudence and simply create a _de_ _facto_ insurer standard for premises-owner liability in Texas: A plaintiff may claim that a hazard has existed "forever" irrespective of factual context, and a jury is always free to agree with such claims no matter how unreasonable or arbitrary, in imposing liability on a premises owner. This rule, as advocated by the dissent and which is the only basis for finding in favor of Dixon in this case, is clearly proscribed by the Texas jurisprudence on premises-owner liability. Accordingly, we reject it outright for what, in essence, it would be: a judicially-created insurance program for all invitees in Texas.

17

before her fall and (2) an hour so remote from her fall that the plastic binder could not help but have been discovered —— dooms her case. Once the early morning vendors are eliminated as even a remotely possible source, Dixon can point to no believable proximate explanation for the plastic binder's having come to rest at the point of the accident. We are thus left with a plaintiff who has failed to meet her burden of establishing Wal-Mart's constructive knowledge on the basis of plausible temporal evidence.

### III. CONCLUSION

The basic standard of tort liability is reasonableness, determined in the discrete factual context of each case. Accordingly, a plaintiff is not free to make just any temporal argument in attempt to meet her burden of demonstrating constructive knowledge. There has to be a reasonable <u>minimum</u> time limit for constructive knowledge to be implied, but, conversely, there has to be a reasonable <u>maximum</u> time limit as well —— an outside time beyond which there can be no nexus. As with virtually every aspect of tort law, there is no absolute, bright-line rule that establishes these temporal boundaries; unique facts and circumstances control in each case. Just as proximity evidence serves as a "plus factor" for temporal arguments, the minimum and maximum limits on the spectrum of the reasonable time within which constructive knowledge can be imputed is determined by the particular facts of each case.

Although all cases to date have turned on the <u>minimum</u> time

18

required to establish a premises owner's constructive knowledge, this case presents the novel question of the reasonable <u>maximum</u> time limit, given the totality of evidence presented at trial.[25] It defies common sense, and is against all logic, to infer that the plastic binder on which Dixon tripped could possibly have lain on the floor, just two feet away from the Wal-Mart check-out registers, for over eight hours, without being noticed by at least one of the thousands of individuals traversing that spot, including the many employees who were actively patrolling and surveying it for the very purpose of detecting and eliminating any risk to customer safety. The conclusion is inescapable: The source of the plastic binder could not have been the magazine or newspaper vendors who last visited the store early on the morning of Dixon's afternoon accident; and Dixon has proffered no other, believable source. Whatever or whoever the true source might have been, Dixon failed to adduce any evidence of <u>how</u> the plastic binder could have come to rest in that area, much less <u>when</u>. It follows inescapably that she has not established a sufficient evidentiary basis for proving Wal-Mart's constructive knowledge of the presence of an unreasonable risk of harm to its invitees. Accordingly, the district court's denial of Wal-Mart's motion for judgment as a matter of law is reversed, and the case is remanded to that court

---

[25] We are, therefore, "required to make an <u>Erie</u> guess as to what the Texas Supreme Court would most likely decide." <u>Herrmann Holdings Ltd. v. Lucent Tech., Inc.</u>, 302 F.3d 552, 558 (5th Cir. 2002).

for entry of a take-nothing judgment against Dixon and in favor of Wal-Mart.

REVERSED and REMANDED with instructions.

ENDRECORD

DENNIS, Circuit Judge, dissenting:

Because I believe the majority does not apply Federal Rule of Civil Procedure 50 as interpreted in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), and therefore encroaches on the province of the jury, I respectfully dissent.

The facts in this slip and fall diversity tort suit are straightforward. On Sunday, July 28, 1996, at about 5:00 p.m., Billie Jo Dixon, a 56-year-old homemaker, tripped and fell while shopping at a Wal-Mart store in Longview, Texas. The accident occurred when Dixon, after paying for pizza and milk at one of the 29 checkout stands, walked away from the cash register and turned left, intending to exit the store. Approximately two feet from the register, Dixon's feet became entangled in a rope-like piece of plastic lying loose on the floor. As a result of the entanglement, Dixon fell face forward to the floor. The fall rendered her unconscious and caused bleeding from her left eye and knee. Paramedics took Dixon to a local hospital emergency room where she received treatment. After the fall Dixon remained "dazed," and continued to experience dizzy spells, weakness, and tingling in her right arm and hand. The piece of plastic that caused Dixon's fall appeared to be a plastic binder commonly used to hold together stacks of magazines or newspapers, or merchandise.

Dixon filed suit against Wal-Mart in Texas state court seeking

21

recovery for damages she suffered because of the accident. Wal-Mart removed the case to federal court under our diversity jurisdiction. A full jury trial followed, with the jury finding Dixon and Wal-Mart each 50% responsible for the accident. Finding total damages of $125,000, the jury awarded Dixon $62,500. The district judge denied Wal-Mart's Federal Rule of Civil Procedure 50 motion for judgment as a matter of law (JMOL), and Wal-Mart appealed.

The applicable legal standards here are accurately summarized by the majority. When considering a Rule 50 motion for judgment as a matter of law following a jury verdict, we must be "especially deferential" to the jury's findings. Brown v. Bryan County, Okla., 219 F.3d 450, 456 (5th Cir. 2000). We may grant a JMOL only where upon reviewing the entire record, we find that there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on an issue. FED R. CIV. P. 50(a). In evaluating the record, we must make all reasonable inferences for the non-moving party, and disregard all evidence from the moving party that a jury is not required to credit. Reeves, 530 U.S. at 150-51 (2000). And of course, we must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

22

Under Texas state law to recover in this slip and fall suit, Dixon must prove by a preponderance of the evidence:

1. Actual or constructive knowledge of some condition on the premises by the owner/operator;
2. That the condition posed an unreasonable risk of harm;
3. That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
4. That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). As the majority correctly notes, the only issue on appeal is whether Dixon presented the jury a "legally sufficient evidentiary basis" for it to find that Wal-Mart had constructive notice of the plastic binder's hazardous presence on the store's floor.[26]

Dixon established constructive notice through circumstantial evidence, using the standard provided in Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934 (Tex. 1998). In that case the Texas Supreme Court explained that to establish constructive notice through circumstantial evidence, that evidence must prove that it is "more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." Id. at 936. Thus, as the majority notes, Dixon's evidentiary burden is to establish that the plastic binder was on the floor for a sufficiently long period of time that Wal-Mart had a reasonable opportunity to correct that condition. And where, as

_____

[26]Wal-Mart concedes that the other three prongs of the slip and fall liability test are met here.

23

here, the hazard was in constant close proximity to Wal-Mart employees, the reasonable time period needed to correct the defect is shorter than in cases where there are no agents of the premises owner near the danger. Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 816 (Tex. 2002).

To meet this burden Dixon introduced evidence establishing that the plastic binder on which she tripped was similar to the plastic rope used to tie bundles of magazines and newspapers that are delivered to the registers at least once daily. Greg Smith, Wal-Mart store director, explained that magazine vendors used the plastic binders to bundle their merchandise until they placed the reading materials in racks at the checkout stands. He testified that the magazine handlers would typically "go back to our receiving area with a shopping cart and get the banded magazines together. They take them up front. They bust the bands on them and they stock the registers." He stated that the newspaper racks usually were stocked between 4:30 a.m. and 5:00 a.m., and that the magazines usually were restocked between 8:00 a.m. and 9:00 a.m., but that on occasions of heightened demands either or both might be restocked later in the day.[27] Based on this evidence a jury reasonably could have concluded that the binder was on the floor

---

[27]There was no evidence that there had been an afternoon or late-morning restocking on the day of Dixon's fall because Wal-Mart does not maintain records of magazine and newspaper restocking.

24

near the registers from the morning magazine restocking until the 5:00 p.m. accident, and therefore, Wal-Mart had a reasonable amount of time to remedy the danger, making it liable for Dixon's injuries.

In response to Dixon's evidence which supports a jury finding of constructive notice, the majority notes in expansive detail the testimony of various Wal-Mart employees regarding the store cleaning policy.  It then uses this uncontradicted testimony to "find" that Dixon's theory that the binder was dropped in the morning magazine delivery cannot be the basis of a reasonable jury finding of constructive notice.  The majority is cryptic as to whether this is a "finding" of fact or law.  But in either case the majority oversteps its role.

If the majority was making a factual finding on the basis of testimony a jury was required to credit, it misstates the record when it suggests that more than the existence of a store cleaning policy was uncontradicted in the Wal-Mart employee testimony.  Wal-Mart cites no employee testimony stating that this policy was carried out on the day in question in the area in which Dixon fell.[28]  Rather, the majority infers textbook execution of store

_____

[28]Jean Chatham, Wal-Mart front-end manager, indicated in her deposition testimony that she checked the front area of the store five minutes prior to an accident in the store.  But her description of the accident and the person who reported falling do not match the incident here, and Wal-Mart itself admits that her testimony is of a different incident.  Thus the majority's assertion that "the particular area in which Dixon fell had been inspected most recently approximately five minutes before her

25

policies from mere evidence that the policies had been formulated. But the jury was free to believe that the cleaning policy had not been carried out. And therefore this court on review cannot make an inference favorable to Wal-Mart, given the Supreme Court's clear directive that when considering a motion for a JMOL a court cannot make inferences for the moving party that the jury was not required to make. Reeves, 530 U.S. at 150-51.

If the majority is crafting a new rule of law, it is on even shakier ground. The majority asserts that it is applying the "converse" principle to Gonzalez, which is that there is a maximum time period that a plaintiff may establish a hazard was present and still establish premises liability. The majority gives no support in Texas case law for this proposition.[29] And given that logic belies a converse principle to Gonzalez, this is not surprising. Gonzalez speaks to the policy determination made in Texas that premises owners are not insurers of their invitees' safety. As a result, a hazard must have been in place sufficiently long that a proprietor has a reasonable opportunity to detect and correct it.

---

accident" is simply not supported by the record.

[29]In response to this criticism, the majority claims it derives support for this rule from a "reasonableness" principle applied by the Texas Supreme Court. But as I explained above, Dixon's theory of constructive notice is unreasonable only if you infer from the existence of a store cleaning policy, execution of that policy. By so doing, the majority makes an inference the jury was not required to make for the moving party, and therefore oversteps the bounds of its Rule 50 review. Reeves, 530 U.S. at 150-51 (2000).

There can be no "converse" of this proposition because the greater the amount of time a hazard is present, the more unreasonable is the premises owner for failing to correct it.

I believe the effect of the majority opinion is to apply a new presumption in favor of premises owners: where a premises owner has a policy regarding hazards, it is presumed that policy is carried out in each case. Thus, the existence of a store cleaning policy here means that we presume a plastic binder could not have been on the store floor for eight hours in contravention of the policy (albeit subject to rebuttal by the invitee). By creating such a presumption not only does the majority exceed the bounds of our diversity jurisdiction by creating new, unsupported mandatory inferences in state tort law, Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Inc., 174 F.3d 653, 656 (5th Cir. 1999) (role of federal courts sitting in diversity is to decide cases as the highest state court would decide them), but it also tramples upon the jury's role as arbiter of credibility and fact. Liberty Lobby, 477 U.S. at 255. I would, therefore, uphold the jury verdict and affirm the judgment of the district court.

27